Chief Judge Breitel.
Plaintiff author brought this proceeding under CPLR 7510 to confirm an arbitration award granting her $45,000 in compensatory damages and $7,500 in punitive damages against defendant publishing company. Supreme Court confirmed the award. The Appellate Division affirmed, one Justice dissenting, and defendant appeals.
The issue is whether an arbitrator has the power to award
*356 The order of the Appellate Division should be modified to vacate the award of punitive damages and otherwise affirmed. An arbitrator has no power to award punitive damages, even if agreed upon by the parties (Matter of Publishers’ Assn. of N. Y. City [Newspaper Union], 280 App Div 500, 504-506). Punitive damages is a sanction reserved to the State, a public policy of such magnitude as to call for judicial intrusion to prevent its contravention. Since enforcement of an award of punitive damages as a purely private remedy would violate strong public policy, an arbitrator’s award which imposes punitive damages should be vacated.
Plaintiff is the author of two books published by defendant. While the publishing agreements between the parties contained broad arbitration clauses, neither of the agreements provided for the imposition of punitive damages in the event of breach.
A dispute arose between the parties and in December, 1971 plaintiff author brought an action for damages alleging fraudulent inducement, "gross” underpayment of royalties, and various "malicious” acts designed to harass her. That action is still pending.
In March, 1974, plaintiff brought a new action alleging that defendant had wrongfully withheld an additional $45,000 in royalties. Defendant moved for a stay pending arbitration, which was granted, and plaintiff demanded arbitration. The demand requested the $45,000 withheld royalties and puntive damages for defendant’s alleged "malicious” withholding of royalties, which plaintiff contended was done to coerce her into withdrawing the 1971 action.
Defendant appeared at the arbitration hearing and raised objections concerning plaintiff’s standing and the conduct of the arbitration hearing. Upon rejection of these objections by the arbitrators, defendant walked out.
After hearing testimony, and considering an "informal memorandum” on punitive damages submitted by plaintiff at their request, the arbitrators awarded plaintiff both compensatory and punitive damages. On plaintiff’s motion to confirm the award, defendant objected upon the ground that the award of punitive damages was beyond the scope of the arbitrators’ authority.
Arbitrators generally are not bound by principles of substantive law or rules of evidence, and thus error of law or fact *357 will not justify vacatur of an award (see Matter of Associated Teachers of Huntington v Board of Educ., 33 NY2d 229, 235, and cases cited). It is also true that arbitrators generally are free to fashion the remedy appropriate to the wrong, if they find one, but an authentic remedy is compensatory and measured by the harm caused and how it may be corrected (Matter of Staklinski [Pyramid Elec. Co.], 6 NY2d 159, 163; see Matter of Paver & Wildfoerster [Catholic High School Assn.] 38 NY2d 669, 677, and cases cited). These broad principles are tolerable so long as arbitrators are not thereby empowered to ride roughshod over strong policies in the law which control coercive private conduct and confine to the State and its courts the infliction of punitive sanctions on wrongdoers.
The court will vacate an award enforcing an illegal agreement or one violative of public policy (see Matter of Associated Teachers of Huntington v Board of Educ., 33 NY2d 229, 235-236, supra, and cases cited; Matter of Western Union Tel. Co. [Amer. Communications Assn.], 299 NY 177, 187; Matter of East India Trading Co. [Halari], 280 App Div 420, 421, affd 305 NY 866). Since enforcement of an award of punitive damages as a purely private remedy would violate public policy, an arbitrator’s award which imposes punitive damages, even though agreed upon by the parties, should be vacated (Matter of Publishers’ Assn. of N. Y. City [Newspaper Union], 280 App Div 500, 504-506, supra; Domke, Commercial Arbitration, § 33.03; Fuchsberg, 9 NY Damages Law, § 81, p 61, n 9; 14 NY Jur, Damages, § 184, p 46; cf. Local 127, United Shoe Workers of Amer. v Brooks Shoe Mfg. Co., 298 F2d 277, 278, 284).
Matter of Associated Gen. Contrs., N. Y. State Chapter (Savin Bros.) (36 NY2d 957) is inapposite. That case did not involve an award of punitive damages. Instead, the court permitted enforcement of an arbitration award of treble liquidated damages, amounting to a penalty, assessed however in accordance with the express terms of a trade association membership agreement. The court held that the public policy against permitting the awarding of penalties was not of "such magnitude as to call for judicial intrusion” (p 959). In the instant case, however, there was no provision in the agreements permitting arbitrators to award liquidated damages or penalties. Indeed, the subject apparently had never ever been considered.
The prohibition against an arbitrator awarding punitive *358 damages is based on strong public policy indeed. At law, on the civil side, in the absence of statute, punitive damages are available only in a limited number of instances (see Walker v Sheldon, 10 NY2d 401, 404). As was stated in Walker v Sheldon (supra): "[p]unitive or exemplary damages have been allowed in cases where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him, as well as others who might otherwise be so prompted, from indulging in similar conduct in the future.” It is a social exemplary "remedy”, not a private compensatory remedy.
It has always been held that punitive damages are not available for mere breach of contract, for in such a case only a private wrong, and not a public right, is involved (see, e.g., Trans-State Hay & Feed Corp. v Faberge, Inc., 35 NY2d 669, affg on mem at App Div 42 AD2d 535; Van Valkenburgh, Nooger & Neville v Hayden Pub. Co., 33 AD2d 766, 767 [breach of contract by book publisher, which failed deliberately and in breach of good faith to use "best efforts” to promote plaintiff’s books; punitive damages denied], affd 30 NY2d 34 [discussing the facts and particularly the breach of fair dealing in greater detail], cert den 409 US 875; Restatement, Contracts, § 342; 14 NY Jur, Damages, § 183, pp 45-46).
Even if the so-called "malicious” breach here involved would permit of the imposition of punitive damages by a court or jury, it was not the province of arbitrators to do so. Punitive sanctions are reserved to the State, surely a public policy "of such magnitude as to call for judicial intrusion” (Matter of Associated Gen. Contrs., N. Y. State Chapter [Savin Bros.], 36 NY2d 957, 959, supra). The evil of permitting an arbitrator whose selection is often restricted or manipulatable by the party in a superior bargaining position, to award punitive damages is that it displaces the court and the jury, and therefore the State, as the engine for imposing a social sanction. As was so wisely observed by Judge, then Mr. Justice, Bergan in Matter of Publishers’ Assn. of N. Y. City (Newspaper Union) (280 App Div 500, 503, supra):
"The trouble with an arbitration admitting a power to grant unlimited damages by way of punishment is that if the court treated such an award in the way arbitration awards are usually treated, and followed the award to the letter, it would amount to an unlimited draft upon judicial power. In the usual case, the court stops only to inquire if the award is *359 authorized by the contract; is complete and final on its face; and if the proceeding was fairly conducted.
"Actual damage is measurable against some objective standard—the number of pounds, or days, or gallons or yards; but punitive damages take their shape from the subjective criteria involved in attitudes toward correction and reform, and courts do not accept readily the delegation of that kind of power. Where punitive damages have been allowed for those torts which are still regarded somewhat as public penal wrongs as well as actionable private wrongs, they have had rather close judicial supervision. If the usual rules were followed there would be no effective judicial supervision over punitive awards in arbitration.”
The dissent appears to have recognized the danger in permitting an arbitrator in his discretion to award unlimited punitive damages. Thus, it notes that the award made here was neither "irrational” nor "unjust” (p 365). Standards such as these are subjective and afford no practical guidelines for the arbitrator and little protection against abuse, and would, on the other hand, contrary to the sound development of arbitration law, permit the courts to supervise awards for their justness (cf. Lentine v Fundaro, 29 NY2d 382, 386).
Parties to arbitration agree to the substitution of a private tribunal for purposes of deciding their disputes without the expense, delay and rigidities of traditional courts. If arbitrators were allowed to impose punitive damages, the usefulness of arbitration would be destroyed. It would become a trap for the unwary given the eminently desirable freedom from judicial overview of law and facts. It would mean that the scope of determination by arbitrators, by the license to award punitive damages, would be both unpredictable and uncontrollable. It would lead to a Shylock principle of doing business without a Portia-like escape from the vise of a logic foreign to arbitration law.
In imposing penal sanctions in private arrangements, a tradition of the rule of law in organized society is violated. One purpose of the rule of law is to require that the use of coercion be controlled by the State (Kelsen, General Theory of Law and State, p 21). In a highly developed commercial and economic society the use of private force is not the danger, but the uncontrolled use of coercive economic sanctions in private arrangements. For centuries the power to punish has been a monopoly of the State, and not that of any private individual *360 (Kelsen, loc. cit., supra). The day is long past since barbaric man achieved redress by private punitive measures.
The parties never agreed or, for that matter, even considered punitive damages as a possible sanction for breach of the agreement (see dissenting opn below by Mr. Justice Capozzoli, 48 AD2d 814). Here there is no pretense of agreement, although plaintiff author argues feebly that the issue of punitive damages was "waived” by failure to object originally to the demands for punitive damages, but only later to the award. The law does not and should not permit private persons to submit themselves to punitive sanctions of the order reserved to the State. The freedom of contract does not embrace the freedom to punish, even by contract. On this view, there was no power to waive the limitations on privately assessed punitive damages and, of course, no power to agree to them by the failure to object to the demand for arbitration (cf. Brooklyn Sav. Bank v O’Neil, 324 US 697, 704, affg 293 NY 666 ["waiver” of right "charged or colored with the public interest” is ineffective]; see, generally, 6A Corbin, Contracts, § 1515, pp 728-732 [e.g., "waiver” of defenses to an usurious agreement is ineffective]).
Under common-law principles, there is eventual supervision of jury awards of punitive damages, in the singularly rare cases where it is permitted, by the trial court’s power to change awards and by the Appellate Division’s power to modify such awards (see Walker v Sheldon, 10 NY2d 401, 405, n 3, supra). That the award of punitive damages in this case was quite modest is immaterial. Such a happenstance is not one on which to base a rule.
Accordingly, the order of the Appellate Division should be modified, without costs, to vacate so much of the award which imposes punitive damages, and otherwise affirmed.