CHARITABLE PROMOTIONS, a Division of HANSON-GRIFFIS, INC., Respondent, v PAUL ANKA et al., Appellants.

In the Matter of the Arbitration between PAUL ANKA PRODUCTIONS, INC., Appellant, and CHARITABLE PROMOTIONS, Respondent.

First Department, July 7, 1977

*Leonard M. Marks* of counsel *(Gold, Farrell & Marks),* for appellants.

*Joseph Z. Epstein* of counsel *(Pryor, Cashman, Sherman & Flynn),* for Charitable Promotions, respondent.

KUPFERMAN, J. P. Paul Anka Productions, Inc. a Nevada corporation (hereinafter "Productions") entered into an agreement with Charitable Promotions (hereinafter "Charitable") for the services of Paul Anka, the singer, at seven concerts in a one-week period in southern States to help raise funds for some charities, and paid $100,000 down on an arrangement for a total payment of $170,000. On the day the first engagement was to commence, October 29, 1975, Charitable was notified that Anka could not be present because of illness.

The agreement incorporated by reference an arbitration clause from the standard American Guild of Variety Artists (AGVA) contract.[1]

By letter of December 2, 1975, Charitable notified AGVA of

---

1. "ARBITRATION. All claims or disputes by either party (including AGVA) as to the application or interpretation of the terms and conditions of this agreement or the breach of any provisions thereof shall be attempted to be adjusted between the parties (including AGVA) and in the event they are not satisfactorily solved, they shall be submitted for arbitration to the Board of Mediation and Conciliation, if any, in the state in which the dispute arose, or if none, to the American Arbitration Association under its Rules then appertaining by AGVA or the Operator Employer. The decision of the arbitrator shall be final and binding on all parties concerned. The cost of the arbitration and the compensation and expenses of the arbitrator shall be borne equally by the parties. Such arbitrations held before the American Arbitration Association shall be held in New York City whenever practical and whenever in the opinion of the AGVA Executive Board or the American Arbitration Association, the holding of such arbitration in New York City does not create substantial injustice to either party to the dispute. A claim, dispute or violation which has not been presented to AGVA, by certified mail, return receipt requested, within a period of thirty (30) days from the occurrence of the event giving rise thereto, or within thirty (30) days after the termination of the engagement, shall be untimely and shall not be processed."

its claim of loss due to the cancellation, and there were negotiations looking toward a settlement. The $100,000 deposit was placed in escrow pending a disposition. On April 22, 1976, Charitable submitted a demand for arbitration to AGVA, which declined jurisdiction, and thereafter it was submitted to the New York State Mediation Board as the next step provided for in the arbitration clause of the agreement. Because there was no labor dispute, arbitration before the New York State Mediation Board was stayed by Mr. Justice NADEL. In the meantime, Charitable sought and was granted an order of attachment on the ground that Productions was a foreign corporaton and Anka individually was not a New York resident or domiciliary. From the proceeds of an engagement by Anka at the Westchester Premier Theatre, some $60,000 was attached. Thereafter, Charitable demanded arbitration before the American Arbitration Association against Productions, and Productions moved to stay the arbitration, while Charitable cross-moved to compel arbitration. Anka also moved to vacate the order of attachment and to dismiss the complaint against him for failure to state a cause of action. The action against Productions is for breach of contract and against Anka for a tortious interference with the contract. Productions answered the complaint and counterclaimed for breach of an oral agreement to reschedule the engagements.

Mr. Justice HUGHES at Special Term consolidated all of the motions. He sustained the theory of the complaint against Anka individually, but dismissed it on a procedural basis with leave to serve an amended complaint, because the cause alleging tortious interference by Anka with the contract with Productions was intertwined with the breach of contract claim against Productions. We affirm as to that. (CPLR 3014; *Roberts v Finkel,* 46 AD2d 878.)

Special Term dismissed the Productions' counterclaim against Charitable, because the substitute oral arrangement alleged was merely an offer by Productions and did not rise to the level of a formal enforceable contract. While the factual basis for this counterclaim does seem nebulous,[2] when the court elects to treat a motion to dismiss as a motion for summary judgment, it may do so only on adequate notice to the parties in order to afford an opportunity for submission of

2. Subject to a further factual presentation, it does not seem as if the only missing aspect is the date of performance. (Cf. *Metro-Goldwyn-Mayer v Scheider,* 40 NY2d 1069.)

further papers. (CPLR 3211, subd [c]; *Gronim v Dessau,* 58 AD2d 566.) Accordingly, we reverse and the counterclaim should be reinstated without prejudice to a subsequent summary judgment motion directed thereto.

Special Term denied the Anka motion to vacate the order of attachment. It does not appear that plaintiff "must ultimately fail" on the merits *(Carey v Sugar,* 425 US 73, 78) and Anka is a nonresident (CPLR 6201, [subd 1]). Further, the corporation is a foreign corporation whose continued existence and financial responsibility seems to be dependent on the individual whose name it bears. It is contended, however, that the amount attached is excessive, because the bulk of Charitable's claim is not for actual expenses, but claims of third parties for hall rentals, advertising, etc., as to which Charitable denies liability with respect thereto. While there is no question here of obtaining jurisdiction of the parties (see *MacMillan v Hafner,* 42 AD2d 533) the claims are of sufficient substance possibly to sustain the amount involved. We affirm this determination.

The application by Productions as petitioner to stay arbitration was denied. However, there is a serious question in interpreting the arbitration clause as to whether it being presented more than 30 days after the alleged breach,[3] arbitration as a solution was still viable. (Cf. *Matter of Niagara Mohawk Power Corp. v Perfetto & Whalen Constr. Corp.,* 52 AD2d 1081, affd 40 NY2d 986.) While commencement of the action could be a waiver of the right to arbitrate the dispute *(De Sapio v Kohlmeyer,* 35 NY2d 402) Charitable contends its complaint was in aid of attachment and not simply for independent litigation. However, the complaint is broader than the arbitration claim and does not indicate a limitation simply in aid of the arbitration. Further, Charitable sought and received affirmative relief in the initial dismissal of the Productions' counterclaim. The circumstances of the case determine whether there is a waiver. (Domke, Commercial Arbitration § 19.01, p 180.) We are reinforced in our conclusion that arbitration was waived by the fact that the litigation route is the more comprehensive doing justice to all parties. The arbitration clause does not bind Anka individually, but he is a

---

**3.** Charitable suggests that the 30-day provision should date from the conclusion of the performance contracted for, which would be November 4. However, any breach was definite on October 29. (See *Matter of Queensborough Community Coll. v State Human Rights Appeal Bd.,* 41 NY2d 926.)

party to the litigation. Further, demanded in both the arbitration and the litigation, exemplary damages to the extent they can or should apply, would be barred in the arbitration. *(Garrity v Lyle Stuart,* 40 NY2d 354.) Therefore, the determination at Special Term is reversed, and Productions' motion to stay arbitration should be granted, and Charitable's motion to compel arbitration should be denied.

The appeal by Anka and Productions from the purported order of March 24, 1977 (HUGHES, J.) declining to sign their order to show cause should be dismissed without costs as unentered and as not appealable. The order of March 7, 1977 should be modified on the law, without costs, to the extent of denying plaintiff's motion to dismiss the counterclaim without prejudice and otherwise should be affirmed. The judgment of March 7, 1977 should be reversed, on the law, without costs, vacated, the petition reinstated, the application for a stay granted and the cross motion to compel arbitration denied.

LUPIANO, EVANS and MARKEWICH, JJ., concur.

Order, Supreme Court, New York County, entered on March 7, 1977, unanimously modified, on the law, to the extent of denying plaintiff's motion to dismiss the counterclaim without prejudice, and otherwise affirmed, without costs and without disbursements.

Judgment of said court, entered on March 7, 1977, unanimously reversed, on the law, without costs and without disbursements, and vacated, the petition reinstated, the application for a stay granted and the cross motion to compel arbitration denied.

The appeal by Anka and Productions from the purported order of said court of March 24, 1977 is unanimously dismissed, without costs and without disbursements, as unentered and as not appealable.