(May 23, 1989)

■ DONALD SCHUPAK, Respondent, v PORSCHE AUDI MANHATTAN, INC., Appellant.—Order of the Supreme Court, New York County (Elliott Wilk, J.), entered March 17, 1988, which, *inter alia,* (1) denied defendant's motion for summary judgment dismissing plaintiff's second, fourth, fifth and sixth causes of action, as well as plaintiff's claim for punitive damages; (2) denied defendants' motion · for judgment upon its counterclaims; and (3) directed that the Ticoff Corporation be joined as a necessary party, unanimously modified, on the law, to the

extent of granting the defendant's motion as to the second, fifth and sixth causes of action, striking the claim for punitive damages and vacating the direction that the Ticoff Corporation be joined as a necessary party, and otherwise affirmed, without costs.

The appeal from the order of the same court, entered June 30, 1988, which denied defendant's motion for reargument is dismissed as nonappealable, without costs.

In May 1985, a Porsche nominally owned by the Ticoff Corporation, of which the plaintiff, Mr. Schupak, is the vice-president, but driven by Mr. Schupak for pleasure and garaged at his residence, was brought by Mr. Schupak's chauffeur to the defendant's premises for servicing; a tapping had been heard coming from the car's underside. Upon opening and examining the car's transmission, defendant's service personnel discovered that several teeth had been sheared off of the reverse gear, a condition which was attributed to the driver's failure to stop the car's forward motion before shifting into reverse. Repairs were authorized and completed, and plaintiff paid the $1,800 repair bill without protest. The repair parts and labor were warranted for six months or 6,000 miles, but the coverage did not extend to problems caused by driver abuse. Some four months later, in September 1985, when the Porsche had traveled less than 1,200 additional miles, the tapping noise returned and the car was again brought by the plaintiff's chauffeur to the defendant for servicing. The chauffeur states that he was assured that the repairs would be covered under the above-described warranty and that he communicated this assurance to the plaintiff. The defendant, however, asserts that on September 25, two days after the car had been brought in and once its mechanics had had a chance to inspect the transmission and diagnose the cause of the problem, the plaintiff was advised over the telephone that the problem was the same as that which had been encountered on the occasion of the previous repair, namely, that the driver had shifted into reverse while the car was moving forward and, in so doing, had caused damage to the gear teeth. The defendant states that the plaintiff was advised that, under these circumstances, the repair would cost about $2,000. The plaintiff does not deny having been so advised or that he instructed the defendant to go ahead with the repairs. In early October 1985, plaintiff was notified that the repairs had been completed and that the bill came to $1,795. The plaintiff, however, refused to pay that amount, claiming that the repairs should be covered under the warranty. In the days

which followed, plaintiff went to great lengths to make known his dissatisfaction with the defendant's conduct. He placed an ad in the New York Times offering the car for sale. In the advertisement's text he mentioned that defendant had reneged on its warranty. He also had the defendant's east and west side premises and the New York automobile show picketed; the picketers bore signs and passed out leaflets stating that the defendant did not honor its repair warranties or treat its customers fairly.

This action was commenced in December 1985. On January 14, 1986, plaintiff bonded defendant's garageman's lien and regained possession of the Porsche. As is here relevant, the complaint contains (1) a second cause of action alleging that the defendant fraudulently misrepresented that the September 1985 repairs would be covered under the prior repair warranty; (2) a fourth cause of action alleging the defendant's breach of the repair warranty; (3) a fifth cause of action alleging breach of contract based upon the promise of coverage it is said was made to plaintiff's chauffeur; and (4) a sixth cause of action alleging the defendant's violation of Vehicle and Traffic Law § 398-e. Plaintiff has also asserted a claim for punitive damages.

Defendant has moved for summary judgment dismissing all of the aforestated causes—the remaining causes in the complaint—and has sought summary judgment upon its counterclaims for the amount of the repair bill, for storage charges imposed prior to plaintiff's bonding of the garagemen's lien, and for libel based on the previously described statements disseminated by leaflet, poster, and newspaper advertisement. This relief was denied by the IAS court.

After reviewing the record, we are persuaded that the order appealed should be modified to grant defendant's summary judgment motion to the extent of dismissing plaintiff's second, fifth and sixth causes, and to strike the claim for punitive damages.

The second cause asserting a claim for fraudulent misrepresentation is not sustainable because plaintiff authorized the September 1985 repairs only after having been informed by the defendant that they would not be covered under the repair warranty. Having been so advised, plaintiff will not be able to establish, as would be necessary for him to prove the alleged fraud, that he reasonably relied on the earlier representation of coverage allegedly made to his chauffeur. Similarly unsustainable is the fifth cause of action asserting breach of the oral promise of coverage which it is claimed was made to the

plaintiff through his chauffeur. Assuming it to have been made, the promise was unsupported by any consideration and could not of its own create an obligation more extensive than that set forth in the warranty. The sixth cause of action seeking damages for defendant's claimed violation of Vehicle and Traffic Law § 398-e is also flawed. Vehicle and Traffic Law § 398-e does not set forth a basis for recovery in a plenary civil action. Insofar as section 398-e provides for restitution to those who have suffered financial loss as a result of the misrepresentations of motor vehicle repair shop registrants or the failure of those registrants to perform repairs in a workmanlike fashion, it is by means of administrative proceedings initiated by the Commissioner of Motor Vehicles or his designee and reviewable pursuant to CPLR article 78, not by the addition of a statutory cause of action duplicative of avenues of relief already available at common law.

As to the fourth cause of action predicated upon the warranty, however, we reach a different result. On this record, we are unable to say that there is no issue of fact respecting whether the September 1985 repairs were covered by the subject warranty. While it is true that defendant's employees state without much elaboration that the recurrence of the transmission problem was certainly due to driver error, this conclusion is disputed in an affidavit by Mr. Jean Ligondi, a mechanic of some 22 years' experience, who states that the need for the second set of repairs may have arisen from initially faulty repairs. We acknowledge that the Ligondi affidavit is brief and nonspecific, but think it only fair to note that neither the plaintiff nor Mr. Ligondi was able to be present when defendant's mechanics opened the Porsche transmission and diagnosed the cause of the renewed problem. If it is true, as the defendant states, that examination of the transmission before its repair was essential to a proper diagnosis of the difficulty, it follows that defendant's employees are the only ones in possession of the information necessary to determine whether the second set of repairs fell within the scope of the warranty. "Credibility of persons having exclusive knowledge of facts should not be determined by affidavits submitted on summary judgment motions, but rather at trial by the trier of facts. Where, as here, the allegations [of the defendant] relate to matters solely within [the defendant's] knowledge, plaintiff's inability to refute by evidentiary proof those allegations should not be held against plaintiff on the determination of the motion". *(Koen v Carl Co.,* 70 AD2d 695; *see also, Capelin Assocs. v Globe Mfg. Corp.,* 34 NY2d 338.)

The issues of fact which preclude the grant of defendant's motion for summary judgment as to the fourth cause of action also dictate the denial of defendant's motion for judgment upon its counterclaims. Plaintiff's liability for the repair and storage of his automobile will depend upon whether the repairs are ultimately found to be covered by the warranty. The disposition of the libel counterclaim too will depend upon whether the defendant is found to have honored its obligations under the warranty.

In light of the fact that we are dismissing plaintiff's cause based on fraud, and because there is, in any event, no evidence of any particularly wanton or morally culpable conduct by the defendant in this private dispute over the applicability of a warranty, we think it appropriate to strike that portion of the ad damnum clause asserting a claim for punitive damages *(see, Garrity v Lyle Stuart, Inc.,* 40 NY2d 354).

Finally, since the parties agree that this dispute is in reality one between Mr. Schupak and Porsche Audi Manhattan, and it is, in any case, clear that the interests of the Ticoff Corporation, the Porsche's nominal owner, will not be affected by the future course of the lawsuit, we vacate the direction that the Ticoff Corporation be joined pursuant to CPLR 1001 and 1003. Concur—Murphy, P. J., Sullivan, Milonas, Rosenberger and Wallach, JJ.