■ In the Matter of the Arbitration between DREYFUS SERVICE CORPORATION, Respondent, and ROMAN R. KENT, Appellant.—Judgment, Supreme Court, New York County (Myriam J. Altman, J.), entered October 30, 1990 which granted petitioner's application to modify an arbitration award insofar as it awarded punitive damages, unanimously affirmed, without costs and disbursements.

Respondent sets forth no compelling reason for this court to depart from the long-standing rule in this State that "[a]n arbitrator has no power to award punitive damages, even if agreed upon by the parties [citation omitted]." *(Garrity v Lyle Stuart, Inc.,* 40 NY2d 354, 356.) While Federal distrust of arbitration in the area of securities law has substantially eroded *(see, Shearson/American Express v McMahon,* 482 US 220), and the Federal Arbitration Act (9 USC § 1 *et seq.)* has

placed arbitration agreements upon the same footing as other contracts *(id.)*, such agreements nevertheless remain subject in New York to the overriding public policy against an award of punitive damages by an arbitrator. Concur—Murphy, P. J., Carro, Ellerin and Smith, JJ.

Asch, J., concurs in a separate memorandum as follows: I agree with the result reached in the memorandum for the list under the authority of *Garrity v Lyle Stuart, Inc.* (40 NY2d 354). While the appellant claims that the law in New York is in conflict with Federal authority, citing, *inter alia, Matter of Barbier v Shearson Lehman Hutton* (948 F2d 117), the Second Circuit, in that case, found that the application of *Garrity* was not in derogation of the agreement involved, but in accordance with the agreement, since the parties agreed to abide by New York law. Further, while we, of course, give great deference to the interpretation of a Federal statute by the lower Federal courts, we are not bound by that interpretation *(see, People v Kin Kan,* 78 NY2d 54, 60).

However, I write in a separate concurrence to express my belief that if the Court of Appeals were to reexamine the issue of whether punitive damages can be awarded by an arbitrator in securities disputes, it might well decide that changing times and circumstances mandate a reconsideration of the rule announced in *Garrity (supra)*.

The four person majority in *Garrity (supra,* at 359) wrote, in pertinent part:

"Parties to arbitration agree to the substitution of a private tribunal for purposes of deciding their disputes without the expense, delay and rigidities of traditional courts. If arbitrators were allowed to impose punitive damages, the usefulness of arbitration would be destroyed. It would become a trap for the unwary given the eminently desirable freedom from judicial overview of law and facts. It would mean that the scope of determination by arbitrators, by the license to award punitive damages, would be both unpredictable and uncontrollable. It would lead to a Shylock principle of doing business without a Portia-like escape from the vise of a logic foreign to arbitration law.

"In imposing penal sanctions in private arrangements, a tradition of the rule of law in organized society is violated. One purpose of the rule of law is to require that the use of coercion be controlled by the State (Kelsen, General Theory of Law and State, p 21). In a highly developed commercial and economic society the use of private force is not the danger, but

the uncontrolled use of coercive economic sanctions in private arrangements."

Note, even in *Garrity (supra,* at 359), the Court explicitly recognized that: "In a highly developed commercial and economic society the use of private force is not the danger, but the uncontrolled use of coercive economic sanctions in private arrangements."

That is my precise concern with the present rule. It appears that the present state of affairs, at least in the securities field, where consent to arbitration of disputes is now a *sine qua non* before the average citizen can open an account at any brokerage, has reversed the application of these principles enunciated by the Court of Appeals. Before the United States Supreme Court decided that an arbitration agreement in an investor-broker contract was binding on the investor *(see, Shearson/American Express v McMahon,* 482 US 220), the investor could proceed in arbitration and waive any claim to punitive damages *or* bring suit in a judicial forum where such a claim would be cognizable. Since *McMahon,* this option has been largely foreclosed. The average investor would be hard put to find a brokerage that would accept his/her business without a prior arbitration agreement. Accordingly, arbitration has now become "a trap for the unwary" investor. Under the present state of affairs, the danger represented in "the uncontrolled use of coercive economic sanctions in private arrangements" *(supra,* at 359) no longer refers to the ability of an arbitrator to impose punitive damages, but the inability of the investor to recover for real, and in some cases, glaring abuses.