Joseph **WALTMAN**

v.

**FAHNESTOCK & CO., INC.**

**Civ. A. No. 92–2143.**

United States District Court, E.D. Pennsylvania.

June 11, 1992.

Robert Scandone, Philadelphia, Pa., for plaintiff.

Joseph Spelman, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

Pursuant to Fed.R.Civ.P. 12(b)(6), defendant, Fahnestock & Co., Inc., filed a motion to dismiss the plaintiff's complaint. Having considered the parties' briefs, I will grant Fahnestock's motion.

## I. BACKGROUND

This motion is the latest episode in a long running drama. The story began when Fahnestock discharged Joseph Waltman in December, 1988. Before that time, Mr. Waltman worked for the firm in two capacities. He was the head of Fahnestock's retirement division, and he also ran a general insurance agency in Pennsylvania as a sub-licensee for Fahnestock.

In conjunction with the discharge, Fahnestock filed a termination notice with the National Association of Securities Dealers. Fahnestock then tried to obtain certain files from Mr. Waltman, but Mr. Waltman claimed the files were his and refused to release them. After this dispute, Fahnestock filed a claim with the director of arbitration of the New York Stock Exchange seeking the files, damages, costs, and other expenses.

Fahnestock also amended Mr. Waltman's termination notice. The first one simply said Mr. Waltman left the firm because of a "business consolidation." The amended copy reported Mr. Waltman was under "internal review for fraud or wrongful taking of property, or violating investment related statutes, regulations, rules, or industry standards of conduct."

When Mr. Waltman answered the arbitration complaint, he included a counterclaim for defamation, wrongful discharge, harassment, and malicious and reckless conduct designed to damage his good name and destroy his career. In January, 1990, the arbitrators awarded Mr. Waltman compensatory damages, damages for defamation, legal fees, and punitive damages.

Mr. Waltman sought to confirm and enter his judgment here in the Eastern District of Pennsylvania, but I stayed that action while Fahnestock attempted to vacate the arbitration award in the Southern District of New York. The Honorable Peter K. Leisure vacated the punitive damages award, but allowed the compensatory damages to stand. The Second Circuit affirmed Judge Leisure's decision in *Fahnestock & Co. v. Waltman*, 935 F.2d 512 (2d Cir.1991). Essentially, Judge Leisure and the Second Circuit held that New York law

governed the arbitration and that New York law prohibited arbitrators from awarding punitive damages. *See id.* at 517–9. *See also Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976).

One petition for certiorari and several collection proceedings later, Mr. Waltman filed this complaint. He seeks punitive damages because he was unable to get them during arbitration. Fahnestock, on the other hand, argues the doctrine of res judicata bars this claim.

## II. ANALYSIS

■ Since this is a motion to dismiss, I must accept all of Mr. Waltman's allegations as true and I must accept all reasonable inferences that flow from his allegations. Nevertheless, because I find the doctrine of res judicata clearly bars his claim, I must grant Fahnestock's motion.

### A. Res Judicata

■ Judge Becker outlined the showing necessary to trigger res judicata in *Napier v. Thirty or More Unidentified Federal Agents*, 855 F.2d 1080 (3d Cir.1988): (1) a final decision on the merits, (2) a prior suit involving the same parties or their privies, and (3) a subsequent suit based on the same cause of action. *Id.* at 1086.

In this case, the defendant has satisfied its burden. In the previous arbitration, which involved the same parties, the arbitrators rendered a final decision on the merits for all of Mr. Waltman's claims against Fahnestock.

■ Mr. Waltman argues there was never a final decision regarding punitive damages because the Second Circuit specifically held the arbitrators had no power to reach that aspect of the case. He therefore claims he is entitled to seek punitive damages now. As the defendant points out, though, punitive damages are a remedy, not a cause of action. The cause of action here is the same that Mr. Waltman pursued in New York. Just as he did there, he seeks damages for the termi-

nation of his employment, albeit damages of a different character.

In *Rhoads v. Heberling*, 306 Pa.Super. 35, 451 A.2d 1378 (1982), Judge Popovich alluded to the distinction between a remedy and a claim when he affirmed a judge's instruction to a jury that it could award punitive damages, even if it did not award compensatory damages. He held that such a situation would be acceptable, but it would be "essential [ ] that facts be established that, apart from punitive damages, are sufficient to maintain a cause of action." *Id.* 451 A.2d at 1383.

The Pennsylvania Supreme Court reiterated this analysis in *Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97, 555 A.2d 800 (1989), when it addressed whether punitive damages needed to bear a relationship to compensatory damages. Justice Zappala wrote: "If no cause of action exists, then no independent action exists for a claim of punitive damage since punitive damages is [sic] only an *element* of damages." *Id.* 555 A.2d at 802.

In this case, Mr. Waltman claims he is bringing an action for punitive damages, but *Rhoads* and *Kirkbride* show he is really bringing a second action for defamation (based on the same facts and against the same party) and attempting to collect additional relief. The doctrine of res judicata is therefore a bar.

### B. The Arbitration Agreement

Mr. Waltman argues that if he had known New York arbitrators could not award punitive damages, he could have had the issue determined unarbitrable, removed from arbitration, and placed before a judicial body that could have granted the relief he deserved. He claims he is now being prejudiced because Fahnestock waited until after the arbitration to challenge the punitive damages award. This argument also fails.

First, nothing requires a party to challenge arbitrability before the arbitration proceedings unless not doing so would create a waiver or laches situation. In fact, as with any trial strategy, Fahnestock's decision to wait involved its own risks, and its

success is not grounds for invalidating the result it achieved. Clearly, Mr. Waltman might have tried to remove from arbitration the punitive damages issue himself, and it is conceivable that a court might have granted such a motion.

Second, it is true that when faced with the question of arbitrability, courts inquire whether there is a valid arbitration agreement and whether the dispute is within the scope of the agreement. *See A.T. & T. Tech., Inc. v. Communications Workers*, 475 U.S. 643, 106 S.Ct. 1415, 1418–9, 89 L.Ed.2d 648 (1986). It is therefore conceivable that a court could have severed the punitive damages issue from the arbitration.

The problem here would have been, however, that neither New York nor Pennsylvania law provides for a separate cause of action for punitive damages. *See Santos v. Security and Law Enforcement Employees, Council 82, AFSCME, AFL–CIO*, 80 A.D.2d 554, 435 N.Y.S.2d 357, 358 (2d Dept.1981) (New York); *Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97, 555 A.2d 800 (1989) (Pennsylvania). For this reason, even if Mr. Waltman could have withdrawn the punitive damages issue from arbitration, he could not have litigated it as an independent claim.

In addition, the parties' arbitration agreement would have precluded Mr. Waltman from removing his entire claim from arbitration so he could get punitive damages. The parties proceeded under the constitution and rules of the New York Stock Exchange. These regulations require that "any controversy between … a member, allied member or member organization and any other person, arising out of the business of such member …, shall at the instance of any such party be submitted for arbitration;" and that arbitration is the proper forum for "any dispute, claim or controversy" or "any controversy … arising out of employment or the termination of employment." The terms of this agreement required arbitration for any claim.

### III. CONCLUSION

■ By accepting employment under these conditions, Mr. Waltman accepted

certain advantages and disadvantages. As it turns out, one of the disadvantages was to surrender the chance to collect punitive damages in arbitration—and quite possibly to collective punitive damages at all. Of course, this outcome does not make the arbitration agreement unfair or permit me to rewrite it. Both Fahnestock and Mr. Waltman are well acquainted with business practices, and I can only assume they understood and intended the implications of their arrangements whatever those implications proved to be.

For these reasons, Mr. Waltman has failed to state a claim for which I can grant relief, and I will grant Fahnestock's motion to dismiss.