[991 NYS2d 408]

In the Matter of FLINTLOCK CONSTRUCTION SERVICES, LLC, et al., Appellants, v GRETCHEN WEISS, Respondent.

First Department, August 14, 2014

## APPEARANCES OF COUNSEL

*Leahey & Johnson, P.C.*, New York City (*Peter James Johnson, Jr., Joanne Filiberti* and *Gabriel M. Krausman* of counsel), and *Becker & Poliakoff LLP*, New York City (*Helen Davis Chaitman, Lance Gotthoffer, Peter W. Smith* and *Valerie Sirota* of counsel), for appellants.

*Goodwin Procter LLP*, New York City (*Jeffrey Alan Simes* and *Nathaniel J. Moore* of counsel), for respondent.

## OPINION OF THE COURT

MANZANET-DANIELS, J.

This appeal arises from the motion court's denial of a motion

to stay arbitration of claims for punitive damages in a dispute among investors in a real estate development company. In 2011, respondent investor commenced an arbitration proceeding against petitioners real estate development companies and their principals, alleging fraud and breach of contract, and seeking punitive damages. The parties' relationship was governed by a letter agreement and the operating agreements for petitioners Flintlock Construction Services, LLC (Flintlock) and Basque Construction LLC (Basque).

The Flintlock and Basque operating agreements contain identical choice of law clauses, providing that the agreements "shall be construed and enforced in accordance with the laws of the State of New York."

The Flintlock and Basque operating agreements contain identical arbitration provisions, which provide, in relevant part, that "[a]ny controversy or claim arising out of or relating to this Agreement or the breach or alleged breach of this Agreement, shall be resolved by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association which are then in effect." Although the letter agreement does not itself contain an arbitration clause, it was executed contemporaneously with the operating agreements and describes respondent's role as a member of Flintlock and Basque.

Although petitioners did not object to the punitive damages claim in the original demand for arbitration, they challenged respondent's right to amend the demand to assert claims for fraud and intentional misrepresentation, and moved before the arbitration panel to dismiss several of the claims, including the request for punitive damages. Petitioners asserted, inter alia, that punitive damages were not available/arbitrable. The motion to dismiss the request for punitive damages was denied, on or about July 5, 2012, without prejudice to renewal at the hearing, based on a more complete record as to whether the claim affected interstate commerce, and thus, mandated application of the Federal Arbitration Act (FAA), 9 USC § 1 *et seq.* A hearing before the arbitration panel was scheduled to commence on November 5, 2012.

On or about September 12, 2012, petitioners commenced a special proceeding to "permanently enjoin" the arbitration on the ground that the arbitrators had exceeded their authority, and lacked power to award punitive damages. The motion court

denied the petition, finding that petitioners, having "actively litigated" before the arbitration panel, had "charted their own course," and could not now assert that the arbitrators could not hear the issue of punitive damages (2012 NY Slip Op 33651[U], *5 [2012]).

Petitioners argue that the motion to stay arbitration of the claim for punitive damages was improperly denied, asserting that under New York law arbitrators "ha[ve] no power to award punitive damages, even if agreed upon by the parties" (*Garrity v Lyle Stuart, Inc.*, 40 NY2d 354, 356 [1976]).

We disagree, and now affirm. The arbitration panel denied the motion to dismiss the punitive damages claim without prejudice to renewal upon a complete record. Petitioners ask us, in effect, to render an advisory opinion concerning the availability of punitive damages, which we ought not do. It remains to be determined whether, on this record, the contracts evidence a "transaction involving commerce" such that the FAA, and not state law, applies.

To the extent petitioners argue that the New York choice-of-law provision in the contracts displaces the FAA and mandates the application of the *Garrity* rule, we must disagree. The rules of the American Arbitration Association (AAA) specify that an arbitrator is authorized to award "any remedy which [is] just and equitable and within the scope of the agreement." Where parties agree that the AAA rules will govern, questions concerning the scope and validity of the arbitration agreement, including issues of arbitrability, are reserved for the arbitrators (*see Life Receivables Trust v Goshawk Syndicate 102 at Lloyd's*, 66 AD3d 495, 496 [1st Dept 2009], *affd* 14 NY3d 850 [2010], *cert denied* 562 US —, 131 S Ct 463 [2010]).

Under the FAA, it is for the arbitrators, and not a court, to determine the availability of punitive damages, notwithstanding the general choice-of-law provision in the contracts that they are to be construed and enforced according to New York law. The choice-of-law provision, in the absence of language expressly invoking the *Garrity* rule, or expressly excluding claims for punitive damages, is insufficient to remove the issue of punitive damages from the arbitrator.

Where the parties "agree to include claims for punitive damages within the issues to be arbitrated, the FAA ensures that their agreement will be enforced according to its terms even if a rule of state law would otherwise exclude such claims from arbitration" (*Mastrobuono v Shearson Lehman Hutton, Inc.*,

514 US 52, 58 [1995]). In *Mastrobuono*, the United States Supreme Court held that a New York choice-of-law clause providing an agreement "shall be governed by the laws of the State of New York," did not unequivocally demonstrate an intent to preclude an award of punitive damages (*id.* at 53). The Court reasoned that the best means of "harmoniz[ing]" the choice-of-law provision with the arbitration provision was to read "the laws of the State of New York" to refer to substantive principles a New York court would apply, but not to include rules limiting the authority of arbitrators: "Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither . . . intrudes upon the other" (*id.* at 63, 64).

Merely stating, without further elaboration, that an agreement is to be construed and enforced in accordance with the law of New York does not suffice to invoke the *Garrity* rule. The Supreme Court has made clear that in order to remove the issue of punitive damages from the arbitrators, the agreement must "unequivocal[ly] exclu[de]" the claim (*id.* at 60). The agreement in this case, which provided only that it was to be "construed and enforced" in accordance with the law of New York, did not unequivocally exclude claims for punitive damages from the consideration of the arbitrators (*see e.g. Matter of Americorp Sec. v Sager*, 239 AD2d 115 [1st Dept 1997], *lv denied* 90 NY2d 808 [1997] [affirming arbitral award of punitive damages in the wake of *Mastrobuono*]; *Merrill Lynch, Pierce, Fenner & Smith v Adler*, 234 AD2d 139 [1st Dept 1996] [same]; *Mulder v Donaldson, Lufkin & Jenrette*, 224 AD2d 125 [1st Dept 1996] [same]; *Tong v S.A.C. Capital Mgt., LLC*, 16 Misc 3d 401 [Sup Ct, NY County 2007], *affd as modified* 52 AD3d 386 [1st Dept 2008] [same]). A New York choice-of-law provision does not constitute a manifestation of unequivocal intent sufficient to invoke the *Garrity* rule.

We cannot agree with the dissent's conclusion that the parties' choice-of-law provision evinces "unequivocally" with the requisite specificity demanded by the United States Supreme Court that the parties intended to incorporate the *Garrity* rule disallowing punitive damages in an arbitration. *Matter of Diamond Waterproofing Sys., Inc. v 55 Liberty Owners Corp.* (4 NY3d 247 [2005]), upon whose dicta the dissent relies, involved application of the statute of limitations and does not speak to the issue sub judice.

We are aware of no instance in which the language that an agreement is to be "construed and enforced" in accordance

with New York law has been held to displace *Mastrobuono*. Indeed, case law is to the contrary, consistent with the Supreme Court's admonition that the relevant agreement must "specifically exclude" the issue of punitive damages from the purview of the arbitrator in order to be enforceable (*see e.g. Roubik v Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 181 Ill 2d 373, 375, 692 NE2d 1167, 1168 [1998], *cert denied* 525 US 961 [1998] [choice of law clause providing that "agreement and its enforcement shall be governed by the laws of the State of New York," did not preclude an arbitration panel from awarding punitive damages]).

■ Petitioners' motion to stay the arbitration should be denied for the further reason that they have participated in the arbitration, precluding late resort to CPLR 7503 (b). CPLR 7503 (b) authorizes motions to stay arbitration by parties "who ha[ve] not participated in the arbitration." Petitioners participated in the arbitration process for nearly eight months—selecting arbitrators, participating in preliminary proceedings—before registering an objection to the arbitrability of respondent's claim for punitive damages. Even then, petitioners chose not to move to stay the arbitration, but to make a motion to dismiss the claim, squarely placing the issue of the arbitrability and availability of punitive damages before the arbitrators. Having "charted their own course," in the words of the motion court, they cannot now avail themselves of the mechanisms set forth in CPLR 7503 (b) (*see e.g. Nachmani v By Design, LLC*, 74 AD3d 478 [1st Dept 2010] [party participated in arbitration by serving a response advancing a counterclaim and designating an arbitrator]; *Matter of JJF Assoc., LLC v Joyce*, 59 AD3d 296 [1st Dept 2009], *lv denied* 13 NY3d 706 [2009] [party participated in arbitration by attending a prehearing conference at which a hearing schedule and ground rules were decided upon, and thereafter moving to dismiss the proceeding on the ground it had been improperly brought]; *Mark Ross & Co., Inc. v XE Capital Mgt., LLC*, 46 AD3d 296 [1st Dept 2007] [party participated in the preliminary stages of the arbitration for seven months without objection]).

The dissent's conclusion that the doctrine of waiver does not pertain under the circumstances is irreconcilable with its acknowledgment that the relevant analysis is a contractual one in which the parties' intentions are determinative. Indeed, by stating that the petitioners cannot waive the *Garrity* rule—even by participating in the arbitration, and even by making a mo-

tion to dismiss those very same punitive damages claims—the dissent reverts to the public policy analysis of *Garrity* that has been expressly rejected by the Supreme Court. Since arbitration is a contractual matter, it follows that a party who actively participates in the arbitration waives its right to contest the arbitrability of punitive damages.

Accordingly, the order of the Supreme Court, New York County (Anil C. Singh, J.), entered October 26, 2012, which, to the extent appealed from as limited by the briefs, denied the petition to stay arbitration of respondent's claims for punitive damages, should be affirmed, without costs.

RENWICK, J. (dissenting). The core issue in this case—an appeal from an order denying petitioners' motion to stay arbitration of claims for punitive damages—relates to the tension between New York State policy against the privatization of punitive damages and the federal policy that there is no such prohibition. Specifically, under New York State law, as expressed by *Garrity v Lyle Stuart, Inc.* (40 NY2d 354 [1976]), the power to award punitive damages is limited to judicial tribunals, and is not within an arbitrator's authority.[1] Conversely, the federal view, as reflected in the Federal Arbitration Act (FAA),[2] which applies to arbitration disputes concerning interstate commerce, generally empowers arbitrators to award punitive damages, absent a contractual intent to the contrary. Unlike the majority, I find that, while the agreement here evidences a transaction involving interstate commerce, the provision stating that the agreement is to be "construed and enforced" in accordance with the laws of New York suffices to invoke the *Garrity* rule. Therefore, I dissent and would grant petitioners' motion to stay arbitration of the claims for punitive damages.

## Factual and Procedural Background

This appeal has its genesis in respondent Gretchen Weiss's

---

1. *Garrity's* rationale is that "[p]unitive damages is a sanction reserved to the State" (*Garrity v Lyle Stuart, Inc.*, 40 NY2d 354, 356 [1976]). "The law does not and should not permit private persons to submit themselves to punitive sanctions of the order reserved to the State. The freedom of contract does not embrace the freedom to punish, even by contract" (*id.* at 360).

2. The FAA (9 USC § 1 *et seq.*) applies to any arbitration agreement evidencing a transaction involving interstate commerce (*see* 9 USC § 2). The U.S. Supreme Court has interpreted the term involving commerce in the FAA as the functional equivalent of the more familiar term " 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power" (*Citizens Bank v Alafabco, Inc.*, 539 US 52, 56 [2003]; *see also Allied-Bruce Terminix Cos. v Dobson*, 513 US 265 [1995]; *N.J.R. Assoc. v Tausend*, 19 NY3d 597, 601 [2012]).

investment in real estate development entities owned by her two stepsons. She alleges that in 2005, Andrew Weiss and Stephen A. Weiss, Jr. (the Weiss brothers) were losing money and found themselves in desperate need to settle a lawsuit against them individually, as well as against one of their business ventures, arising from one of their Texas construction projects. They asked their stepmother to invest $500,000 to help save their business. In return, Gretchen received a 25% partnership interest in two real estate development companies owned by the Weiss brothers—Flintlock Construction Services, LLC and Basque Construction LLC.

The parties' relationship was governed by a letter agreement and the operating agreements for Flintlock and Basque. The Flintlock and Basque operating agreements contain identical arbitration provisions, which provide, in relevant part, that "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach or alleged breach of this Agreement, shall be resolved by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association which are then in effect." The Flintlock and Basque operating agreements also contain identical choice-of-law clauses, providing that the agreements "shall be construed and enforced in accordance with the laws of the State of New York."

In 2011, Gretchen commenced an arbitration against the Weiss brothers, Flintlock and Basque (petitioners) alleging, among other things, fraud and breach of contract, and seeking punitive damages for their alleged failure to pay her money owed and their misstatements to her about the aforementioned companies. Subsequently, she filed an amended demand for arbitration, also containing claims for punitive damages. At that juncture, petitioners moved before the arbitration panel to dismiss several of the claims, including the punitive damages claims. Shortly thereafter, they moved for summary judgment, but the arbitrator denied the motion in its entirety.

Some two months after the arbitration panel's denial of their motion, petitioners commenced a special proceeding in New York County Supreme Court to stay the arbitration of all the claims they had sought to have dismissed, on the ground that the arbitrator panel exceeded its authority, and a ruling that they lacked power to award punitive damages. Gretchen opposed the motion. She argued that the agreements were controlled by the FAA, and thus punitive damages were available. She also argued that petitioners had waived any right to submit

the arbitrability of the claims to the courts, and that the motion was premature, as there had been no final arbitral ruling. Supreme Court denied the petition to stay certain arbitration claims, including punitive damages (2012 NY Slip Op 33651[U] [2012]). The court found that petitioners had waived the right to litigate arbitrability in the courts, as they had fully arbitrated the issue. The Weiss brothers appealed.

## Discussion

On this appeal, petitioners concede that the agreement in dispute falls within the scope of the FAA. That does not end the inquiry, however. The FAA ensures that courts enforce arbitration clauses incorporated in contracts involving interstate commerce, thereby "creat[ing] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act" (*Moses H. Cone Memorial Hospital v Mercury Constr. Corp.*, 460 US 1, 24 [1983]; *see also* 9 USC § 2). The FAA requires that "questions of arbitrability . . . be addressed with a healthy regard for the federal policy favoring arbitration," and that "any doubts concerning the scope of arbitrable issues . . . be resolved in favor of arbitration" (*Moses H. Cone*, 460 US at 24-25). The federal policy favoring arbitration, however, does not change the long-established principle that "[a]rbitration 'is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit' " (*PaineWebber Inc. v Bybyk*, 81 F3d 1193, 1198 [2d Cir 1996], quoting *AT&T Technologies, Inc. v Communications Workers*, 475 US 643, 648 [1986]). Rather, the FAA requires " 'arbitration proceed *in the manner provided for in [the parties'] agreement*' " (*Volt Information Sciences, Inc. v Board of Trustees of Leland Stanford Junior Univ.*, 489 US 468, 475 [1989], quoting 9 USC § 4]). In *Volt*, the Court made clear that "[t]here is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate" (*id.* at 476).

In this case, as indicated, petitioners argue that by the choice-of-law clause in the agreement, expressly providing that the agreement be both "construed and enforced" under New York Law, the parties evidenced an intent to limit the power of the arbitrator to award punitive damages. Thus, the discrete issue to address is whether such language constitutes an agreement to adopt the *Garrity* rule's restriction on the remedial power of the arbitrator to award punitive damages.

Unlike the majority, I find that the U.S. Supreme Court's decision in *Mastrobuono v Shearson Lehman Hutton, Inc.* (514 US 52 [1995]) is not dispositive on this issue. *Mastrobuono* held that a general choice-of-law provision, included in a contract that also contained an arbitration clause, was not sufficiently specific to incorporate the chosen state's—New York—prohibition against arbitrators awarding punitive damages. The contract in *Mastrobuono* provided that it "shall be governed by the laws of the State of New York," and that any dispute arising out of the contract " 'shall be settled by arbitration' in accordance with the rules [then in effect] of the National Association of Securities Dealers (NASD)" (*id.* at 58-59). An arbitration panel, convened under the arbitration clause and under the FAA, awarded punitive damages. The lower courts disallowed the award of punitive damages, following the *Garrity* rule that only courts, not arbitrators, may award such damages (*id.* at 54-55).

The Supreme Court reversed. The Court began its analysis by underlining the contractual basis of arbitration and the FAA's sweeping effect in terms of contract enforcement (*id.* at 56). Thus, the Court noted that the FAA would permit parties to either expressly agree to include or agree to exclude punitive damages if they so desired, notwithstanding any state arbitration rule on the subject (*id.*). Moreover, if there were no express choice-of-law provisions in the contract, or if a contract provision were nothing more than a substitute for a conflicts-of-laws analysis leading to the application of New York substantive law, "punitive damages would be allowed because, in the absence of contractual intent to the contrary, the FAA would pre-empt the *Garrity* rule" (*id.* at 59).

Given the existence of the New York choice-of-law provision in the contract, however, the Court examined whether the clause referred only to New York substantive law, or to both substantive law and the *Garrity* rule barring punitive arbitration awards (*id.* at 59-60). To discern the scope of the choice-of-law clause, the Court turned to the rest of the contract to see what the parties intended.

In addition to the New York choice-of-law clause, the contract contained an arbitration clause that made reference to the "rules" of the NASD (*id.* at 59). The applicable NASD rules merely stated that arbitrators could award " 'damages and other

relief' " (*id.* at 61).³ This terse phrase was not much with which to work, but the Court found that the incorporation of this rule, "[w]hile not a clear authorization of punitive damages . . . appears broad enough at least to contemplate such a remedy" (*id.* at 61). Thus, the reference to NASD "rules" was sufficient to create "ambiguity" about the intention of the parties regarding punitive damages (*id.* at 62).

In the face of this ambiguity, the Court offered two grounds for resolving it in favor of the plaintiffs. Crucially, both grounds were based not on federal arbitration law emanating from the FAA, but rather on state-law rules of contract interpretation (*id.* at 61 n 7). First, the Court cited a common-law rule that ambiguous contract language should be construed against the drafter—here Shearson Lehman Hutton. (*id.* at 62). Second, the Court relied on a state contract-law rule of construction that a contract "should be read to give effect to all its provisions and to render them consistent with each other" (*id.* at 63). Supreme Court concluded that

> "the best way to harmonize the choice-of-law provision with the arbitration provision is to read 'the laws of the State of New York' to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators. Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other" (*id.* at 63-64).

As this succinct summary of *Mastrobuono* illustrates, nothing in the Supreme Court's decision challenged the parties' power to agree to select the substantive and/or procedural laws of any state over the FAA. On the contrary, *Mastrobuono* simply holds that even where the FAA applies to an agreement, courts should enforce the parties' intentions as determined by an interpretation of the parties' agreement. If the parties expressly agree to allow arbitral awards of punitive damages, the courts should enforce the agreement. If the parties expressly contract for no arbitral punitive damages, this should also be enforced. In cases like *Mastrobuono*, where the choice-of-law provision creates an

---

**3.** The NASD rules have contained an express prohibition against broker-dealer contracts that limit a customer's access to legally available remedies since 1989; however, the *Mastrobuono* contract was signed in 1985.

ambiguity, federal policy favoring arbitration requires resolving the ambiguity in favor of arbitration (i.e., FAA rules).

The question *Mastrobuono* left unanswered is just what language is necessary to unequivocally apply New York's law that limits the power of arbitrators to award punitive damages. The answer to that question was delivered by the Court of Appeals in the seminal case of *Matter of Diamond Waterproofing Sys., Inc. v 55 Liberty Owners Corp.* (4 NY3d 247, 252 [2005]). In *Diamond*, the petitioner challenged the arbitrability of its statute of limitations defense. Given that the FAA applied, the Court considered what language in the agreement would be sufficient to invoke not just New York's substantive law, but also New York's limitations on the power of arbitrators. The Court concluded that a choice-of-law provision stating that New York law shall govern both "the agreement and its enforcement, adopts as binding New York's rule that threshold [s]tatute of [l]imitations questions are for the courts" (*id.* at 253 [internal quotation marks and emphasis omitted]; *see also CSAM Capital, Inc. v Lauder*, 67 AD3d 149, 154 [1st Dept 2009]). However, in *Diamond*, like *Mastrobuono*, the Court found that the clause used to select the particular state's law by which the contract would be governed was not sufficiently specific as to avoid ambiguity and thus did not give rise to the application of New York's rule (CPLR art 75) that threshold statute of limitations questions are for the courts.

Subsequently, in *N.J.R. Assoc. v Tausend* (19 NY3d 597, 602 [2012]), the Court of Appeals reaffirmed *Diamond* when it reiterated that the FAA approach of leaving timeliness issues to arbitrators is inapplicable "if the agreement . . . so provides." As the Court explained:

> "A contract may be governed by the FAA yet subject to the New York rule if the agreement between the parties so provides. We have explained that a contract specifying that 'New York law shall govern both "the agreement and its enforcement[ ]" adopts' the New York rule that threshold statute of limitations issues are resolved by the courts and not arbitrators (*Diamond Waterproofing*, 4 NY3d at 253, quoting *Matter of Smith Barney, Harris Upham & Co. v Luckie*, 85 NY2d 193, 202 [1995], *cert denied sub nom. Manhard v Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 516 US 811 [1995]).

> "It is unnecessary for us to decide whether the contract at issue is subject to the FAA or New York

law because under either analysis, the proper forum is arbitration. Assuming that the partnership agreement affects interstate commerce and is governed by the FAA, this document does not include the critical "enforcement" language identified in *Diamond Waterproofing*—it states that 'This Agreement shall be governed by, and construed in accordance with, the laws and decisions of the State of New York.' Since the agreement fails to unequivocally invoke the New York standard, the timeliness question must be resolved by an arbitrator under FAA principles" (*N.J.R. Assoc.*, 19 NY3d at 602).

Thus, *Diamond* and its progeny make clear that, even if the FAA applies to an agreement, the parties may still limit the arbitrator's power by invoking New York law. To do so, however, the parties must not only make the agreement subject to New York law, but must also make its "enforcement" subject to New York law. By using such language, the parties "unequivocally" invoke the limitations on arbitration under New York State law.

The majority, however, finds it significant that the language at issue here, that "an agreement is to be 'construed and enforced' in accordance with New York law has [never] been held to displace *Mastrobuono*" (majority op at 55-56). The majority finds that *Diamond* is not controlling here because it "involved application of the statute of limitations and does not speak to the issue sub judice" (*id.* at 55). The majority's refusal to acknowledge that *Diamond* is controlling here appears to be based upon a fundamental difference in its approach to distinguishing between substantive and procedural law. The procedural law establishes whether the arbitrators have the power to address punitive damages claims, while the substantive law establishes whether certain circumstances are proper for granting such remedy.

For example, in an international commercial arbitration case with the situs of New York and with a general choice-of-law clause providing for New York law, New York law would be the substantive law for the dispute, and the FAA would be the procedural law governing the arbitration. New York's procedural rule would not be the proper procedural law for the aforementioned scenario, absent the critical language limiting the power of the arbitrator. Thus, the *Garrity* rule prohibiting arbitrators from awarding punitive damages would not be part of the

procedural rule governing this international arbitration. In this hypothetical, the arbitrator would have the power to award punitive damages. As New York law is the substantive law for the case, however, New York law would be applied by the arbitrator to determine whether punitive damages are warranted.

The majority's position is further weakened by *Mastrobuono*, the same case upon which it relies. As noted, *Mastrobuono* held that the clause invoking the "laws of the State of New York" was a general choice-of-law provision, which did not give rise to the application of New York's arbitration rules, which, unlike the FAA rules, did not permit punitive damages. That is, in *Mastrobuono*, the Supreme Court found that the choice-of-law provision invoked only the application of New York's substantive laws, and not the authority of the arbitrators.

Finally, the majority finds that the motion to stay arbitration of punitive damages should be denied because petitioners "have participated in the arbitration, precluding late resort to CPLR 7503 (b)" (majority op at 56). I disagree. The grant of a permanent stay of respondent's claim for punitive damages would not interfere with the ongoing arbitration proceeding. Moreover, a waiver is akin to an implicit agreement.[4] Indeed, there can be no implicit agreement to submit punitive damages to an arbitrator where the parties' "unequivocal choice-of-law provision" is intended to incorporate the *Garrity* rule.

For the foregoing reasons, I would reverse, vacate the arbitration ruling insofar as it holds that the arbitrators may determine the claims for punitive damages, and permanently stay the arbitration of said claims.

ACOSTA, J.P., and SAXE, J., concur with MANZANET-DANIELS, J.; RENWICK and ANDRIAS, JJ., dissent in a separate opinion by RENWICK, J.

Order, Supreme Court, New York County, entered October 26, 2012, affirmed, without costs.

---

4. A waiver, the intentional relinquishment of a known right, may be accomplished by express agreement or by such conduct or failure to act as to evince an intent not to claim the purported advantage (5 Walter H.E. Jaeger, Williston on Contracts § 725 [3d ed]; *see also Hadden v Consolidated Edison Co. of N.Y.*, 45 NY2d 466 [1978]).