[1 NE3d 302, 978 NYS2d 101]

In the Matter of VILMA LANCASTER et al., Appellants, v INCORPO-RATED VILLAGE OF FREEPORT et al., Respondents. (Proceeding No. 1.)

In the Matter of WILLIAM F. GLACKEN et al., Appellants, v INCORPORATED VILLAGE OF FREEPORT et al., Respondents. (Proceeding No. 2.)

Argued October 9, 2013; decided November 19, 2013

**POINTS OF COUNSEL**

*Wilson Elser Moskowitz Edelman & Dicker LLP*, White Plains (*Robert A. Spolzino, Peter A. Meisels* and *Kathleen A. Daly* of counsel), for appellants. I. The Incorporated Village of Freeport violated appellants' rights to freedom of speech by revoking their defense and indemnification because they refused Freeport's demand that they refrain from criticizing the settlement. (*New York Times Co. v Sullivan*, 376 US 254; *Rosenberger v Rector & Visitors of Univ. of Va.*, 515 US 819; *Citizens United v Federal Election Comm'n*, 558 US 310; *O'Neill v Oakgrove Constr.*, 71 NY2d 521; *Immuno AG. v Moor-Jankowski*, 77 NY2d

235, 500 US 954; *Fairley v Andrews*, 578 F3d 518; *Nebraska Press Assn. v Stuart*, 427 US 539; *United States v Quattrone*, 402 F3d 304; *Lusk v Village of Cold Spring*, 475 F3d 480; *Zieper v Metzinger*, 474 F3d 60.) II. Appellants' rejection of a stipulation prohibiting them from criticizing the settlement is not a failure to cooperate that entitles Incorporated Village of Freeport to revoke their defense and indemnification under Public Officers Law § 18. (*Matter of O'Brien v Spitzer*, 7 NY3d 239; *Matter of Dreyer v City of Saratoga Springs*, 43 AD3d 586; *Matter of LoRusso v New York State Off. of Ct. Admin.*, 229 AD2d 995; *Matter of Polak v City of Schenectady*, 181 AD2d 233; *Giordano v O'Neill*, 131 AD2d 722; *Higgins v Town of Southampton*, 613 F Supp 2d 327; *Mathis v State of New York*, 140 Misc 2d 333; *Feliberty v Damon*, 72 NY2d 112; *New York City Hous. Auth. v Housing Auth. Risk Retention Group, Inc.*, 203 F3d 145; *Nelson Elec. Contr. Corp. v Transcontinental Ins. Co.*, 231 AD2d 207.) III. The Incorporated Village of Freeport violated the Open Meetings Law by revoking appellants' defense and indemnification in an illegal executive session. (*Matter of Gordon v Village of Monticello*, 87 NY2d 124; *Matter of Csorny v Shoreham-Wading Riv. Cent. School Dist.*, 305 AD2d 83; *Matter of Smith v City Univ. of N.Y.*, 92 NY2d 707; *Weatherwax v Town of Stony Point*, 97 AD2d 840; *Matter of Zehner v Board of Educ. of Jordan-Elbridge Cent. School Dist.*, 91 AD3d 1349; *Matter of Goetschius v Board of Educ. of Greenburgh Eleven Union Free School Dist.*, 244 AD2d 552.)

*Jaspan Schlesinger, LLP*, Garden City (*Stanley A. Camhi, Jessica M. Baquet* and *Daniel E. Shapiro* of counsel), for respondents. I. The vast majority of appellants' arguments are based upon the faulty notion that the Incorporated Village of Freeport insisted on the nondisparagement clause. II. The court lacks subject matter jurisdiction because this appeal does not directly involve a substantial constitutional question. (*Matter of Kachalsky v Cacace*, 14 NY3d 743; *Wynkoop Hallenbeck Crawford Co. v Western Union Tel. Co.*, 268 NY 108; *Matter of Schulz v State of New York*, 81 NY2d 336; *Tabankin v Codd*, 40 NY2d 893; *Matter of Town of Rye v New York State Bd. of Real Prop. Servs.*, 10 NY3d 793; *Matter of Sbuttoni*, 16 AD3d 693; *Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Abrams*, 135 AD2d 304; *Matter of Garcia v Abrams*, 98 AD2d 871; *Trump v Trump*, 179 AD2d 201, 80 NY2d 892; *Alexander v United States*, 509 US 544.) III. The Incorporated Village of Freeport properly withdrew appellants' defense and indemnification as a result of

34

their failure to cooperate as required by the Public Officers Law and the Freeport Village Code. (*Thrasher v United States Liab. Ins. Co.*, 19 NY2d 159; *Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Abrams*, 135 AD2d 304; *Matter of Garcia v Abrams*, 98 AD2d 871; *New York State Psychiatric Assn., Inc. v New York State Dept. of Health*, 19 NY3d 17; *Nelson Elec. Contr. Corp. v Transcontinental Ins. Co.*, 231 AD2d 207.) IV. The Open Meetings Law does not provide a basis upon which the resolution and directive can be invalidated. (*Matter of Schulz v State of New York*, 81 NY2d 336; *Weatherwax v Town of Stony Point*, 97 AD2d 840; *Matthes v Town of E. Fishkill*, 785 F2d 43; *Matter of Roberts v Town Bd. of Carmel*, 207 AD2d 404.) V. Respondents did not violate appellants' First Amendment rights. (*Garcetti v Ceballos*, 547 US 410; *Waters v Churchill*, 511 US 661; *Shields v Charter Twp. of Comstock*, 617 F Supp 2d 606; *Rangra v Brown*, 566 F3d 515; *Nestor v Britt*, 270 AD2d 192; *Ruotolo v City of New York*, 514 F3d 184; *Lewis v Cowen*, 165 F3d 154; *Ezekwo v New York City Health & Hosps. Corp.*, 940 F2d 775; *Pappas v Giuliani*, 290 F3d 143; *Alexander v United States*, 509 US 544.)

**OPINION OF THE COURT**

Chief Judge LIPPMAN.

We hold that a municipality, consistent with its obligations under Public Officers Law § 18, may withdraw its defense and indemnification of current and former municipal officials and officers in a civil action for their failure to accept a reasonable settlement offer, and that First Amendment concerns with respect to the settlement's nondisclosure clause do not warrant a different conclusion.

Petitioners William F. Glacken, William White, Donald Miller, Renaire Frierson-Davis, Jorge Martinez, Vilma Lancaster, and Harrison Edwards are current and former elected officials and appointed officers of the Village of Freeport (the Village). In 2008, Water Works Realty Corp. and its principal, Gary Melius (collectively, Water Works plaintiffs), commenced two lawsuits against the Village and petitioners alleging that they orchestrated a scheme to deprive Water Works unlawfully of title and interest in certain real property. The complaints alleged, among other things, civil violations of the Racketeer Influenced and Corrupt Organizations Act, and sought $8,500,000 in damages, treble damages, and attorneys' fees. Defendants removed both

actions to the United States District Court for the Eastern District of New York.*

The Freeport Village Code § 130-6 adopts Public Officers Law § 18 (3) (a), which provides that a "public entity shall provide for the defense of [an] employee in any civil action or proceeding, state or federal, arising out of any alleged act or omission which occurred or allegedly occurred while the employee was acting within the scope of his public employment or duties." The Village's duty to defend and indemnify "shall be conditioned upon: . . . [t]he *full cooperation* of the employee in the defense of such action or proceeding . . . against the Village based upon the same act or omission" (Freeport Village Code § 130-6 [A] [2] [emphasis added]; Public Officers Law § 18 [5] [ii]).

The Freeport Board of Trustees (the Board) authorized the Village to defend and indemnify petitioners and retained separate counsel for the Village and petitioners. Thereafter, the Village's counsel began settlement negotiations with the Water Works plaintiffs. They reached an agreement whereby the Water Works plaintiffs would dismiss the actions against the Village in return for $3,500,000 paid over six years.

In November 2009, the Village officially settled the Water Works actions. As part of the settlement, the Water Works plaintiffs agreed to discontinue the actions against petitioners without any cost or admission of wrongdoing if they signed a stipulation of discontinuance containing a nondisparagement clause. The clause required petitioners to "agree[ ] not to ever interfere, nor challenge or criticize the terms of either Stipulation [of Settlement] in any manner."

On November 10, 2009, the Village's counsel communicated the Water Works plaintiffs' offer to petitioners' counsel. Petitioners' counsel responded that, in his opinion, the nondisparagement clause constituted a:

> "concerted effort by the Village and the plaintiffs to silence any comment by [petitioners] in this matter of public concern, particularly as to those who hold public office, is misguided at best and could be construed as a threat to [petitioners'] First Amendment rights. I suggest revisions . . . to avoid even

---

* Melius also instituted a defamation action in New York Supreme Court against petitioner Glacken, the former mayor, for saying at a political debate in February 2009 that Melius was using the Water Works actions to extort money from the citizens of the Village (*see Melius v Glacken*, 94 AD3d 959 [2d Dept 2012]).

the impression of an effort to impinge on anyone's right to express themselves or to coerce any public official from fulfilling his/her responsibilities."

The Village's counsel answered that the proposed settlement did not violate petitioners' free speech rights; the settlement was advantageous for petitioners; and refusal would be patently unreasonable and a breach of their duty to cooperate under the Public Officers Law and Village Code.

Petitioners refused to settle. The Board subsequently met in executive session and resolved to withdraw petitioners' defense and indemnification.

Petitioners continued to litigate the Water Works actions at their own expense. At a court conference in January 2010, petitioners offered to execute an "unconditional" stipulation of discontinuance; the Water Works plaintiffs refused.

In February 2010, petitioners Lancaster, Miller, White, and Martinez commenced a hybrid CPLR article 78 proceeding and declaratory judgment action seeking a judgment (1) vacating the withdrawal; (2) directing respondents to provide a defense; and (3) declaring invalid the Village's disclaimer of any further obligation to defend petitioners. In March 2010, petitioners Glacken, Frierson-Davis, and Edwards, then represented by different counsel, commenced a substantially similar hybrid article 78 proceeding and declaratory judgment action.

After joining the proceedings, Supreme Court denied both petitions and dismissed the proceedings (2010 NY Slip Op 32341[U] [2010]). It rejected petitioners' arguments that the Village had infringed their First Amendment rights, improperly withdrawn the defense and indemnification for lack of cooperation, and violated the Open Meetings Law.

The Appellate Division affirmed (*Matter of Lancaster v Incorporated Vil. of Freeport*, 92 AD3d 885 [2d Dept 2012]). Petitioners then appealed to this Court as of right under CPLR 5601 (b) (1). We now affirm.

Petitioners argue that (1) the Village violated their free speech rights by withdrawing the defense and indemnification; (2) their refusal to settle did not constitute a failure to cooperate justifying revocation of the defense and indemnification under Public Officers Law § 18; and (3) the Board violated the Open Meetings Law by withdrawing the defense and indemnification in executive session.

Petitioners' constitutional arguments essentially are twofold: the requirement of a nondisparagement clause was an impermissible prior restraint on free speech, and penalizing petitioners for refusing to refrain from criticizing the settlement was unconstitutional retaliation. Neither is persuasive.

Preliminarily, we note that there is no evidence in the record that the Village was responsible for the nondisparagement clause in the Water Works settlement offer. The evidence shows that the Water Works plaintiffs included the clause as a condition of settlement. They apparently continued to insist on the provision even after the Village settled. Their insistence is understandable given petitioner Glacken's public remarks that Melius was extorting the citizens of Freeport.

It is significant that the evidence does not show the Village to have actively sought to restrict petitioners' speech. If there were evidence, for example, that as part of the settlement, the Village induced the Water Works plaintiffs to include the nondisparagement clause in the settlement with petitioners, this might be a different case.

Petitioners allege three distinct acts were prior restraints on speech: (1) the inclusion of the nondisparagement clause in the settlement offer; (2) the Village's threat to cut off the defense and indemnification if petitioners refused to settle; and (3) the Village's withdrawal of the defense and indemnification.

■ The Water Works plaintiffs' inclusion of the nondisparagement clause in the settlement offer was not a prior restraint on speech. Water Works and Melius were private parties and were entitled to offer settlement on whatever terms they saw fit. Had petitioners accepted the settlement and breached its terms, only the Water Works plaintiffs, not the Village, could have sued to enforce it.

Nor was the Village's "threat" to withdraw the defense and indemnification a prior restraint on speech. "[T]he First Amendment prohibits government officials from encouraging the suppression of speech in a manner which can reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request" (*Zieper v Metzinger*, 474 F3d 60, 65-66 [2d Cir 2007] [internal quotation marks and citation omitted]). The reason the Village threatened to withdraw funding was to end the litigation and save public funds, not to suppress speech.

Finally, the withdrawal of the defense and indemnification was not a prior restraint on speech because it was in response

to petitioners' failure to cooperate; it was not a restraint on what petitioners could say in the future (*see Alexander v United States*, 509 US 544, 550 [1993]). Petitioners were free to continue litigating and criticize the settlement as they pleased.

Petitioners argue that the Village could not retaliate against them for refusing to give up their rights to criticize the settlement. To succeed on a First Amendment retaliation claim, a plaintiff must prove (1) that he or she engaged in a protected activity; and (2) that the defendant engaged in retaliatory conduct that was motivated by plaintiff's protected conduct (*Gagliardi v Village of Pawling*, 18 F3d 188, 194 [2d Cir 1994]). The ultimate question is whether the defendant acted with the intent to retaliate for the protected conduct or for some other reason (*id.* at 195).

For example, in *Cooper v Town of E. Hampton* (888 F Supp 376 [ED NY 1995]), the court held that a town board member had stated a retaliation claim where he alleged that the board had refused to defend and indemnify him in a defamation action arising out of certain of his public comments (*id.* at 380). Critical to the court's ruling was the allegation that another board member stated that if the board member seeking indemnification "has to spend money for a lawyer, *that will teach him a lesson to keep his mouth shut*" (*id.* at 378 [emphasis added]).

Likewise, in *Perry v Sindermann* (408 US 593 [1972]), the Supreme Court explained that a public college could not refuse to renew a professor's contract because he had criticized the college administration (*id.* at 597-598). The Court recognized the importance of the college's intent (*id.*). The professor had not been allowed to prove that the college terminated him because of his criticism as opposed to some other reason (*id.*). Therefore the Court remanded the case for further proceedings (*id.* at 598, 603).

In this case, there is no evidence that the Village retaliated against petitioners for their desire to be able to criticize the settlement. The Village simply declined to fund petitioners' defense after they unreasonably refused to settle.

Turning now to petitioners' Public Officers Law § 18 argument, we find it to be equally without merit. A municipal employer's statutory duty to defend a public officer under Public Officers Law § 18 is similar to an insurance company's contractual duty to defend an insured (*Matter of Dreyer v City of Saratoga Springs*, 43 AD3d 586, 588 [3d Dept 2007]). As in

the insurance context, petitioners were obligated to cooperate in the defense of the action as a condition of their defense and indemnification (Public Officers Law § 18 [5] [ii]; Freeport Village Code § 130-6 [A] [2]).

> "In order to disclaim coverage on the ground of an insured's lack of cooperation, the carrier must demonstrate that (1) it acted diligently in seeking to bring about the insured's cooperation, (2) the efforts employed by the carrier were reasonably calculated to obtain the insured's cooperation, and (3) the attitude of the insured, after cooperation was sought, was one of willful and avowed obstruction" (*New York State Ins. Fund v Merchants Ins. Co. of N.H.*, 5 AD3d 449, 450 [2d Dept 2004]; *Thrasher v United States Liab. Ins. Co.*, 19 NY2d 159, 168 [1967]).

Petitioners' first argument is that a public officer's refusal to settle can never constitute a failure to cooperate under Public Officers Law § 18. They claim that an insurer cannot settle a case without the consent of the insured absent a provision in the insurance policy allowing it. They argue that Public Officers Law § 18 is in effect an insurance policy without such a nonconsensual settlement clause. Thus, they contend, their refusal to settle was not a failure to cooperate. Petitioners are wrong.

Unlike an insurer's duty to its insured, the Village's duty to defend and indemnify petitioners is statutory, not contractual. Public Officers Law § 18 is not an insurance contract. The absence of a provision in the statute allowing the Village to settle without petitioners' consent is not dispositive of the Village's authority to do so. It is the intention of the legislature, as evidenced by the language of the statute, that defines the Village's authority.

The language of the statute does not support petitioners' reading. Furthermore, it is inconceivable that the legislature intended such a restricted meaning of the "cooperation" provision as to permit a current or former public employee to refuse a generous settlement offer and expose a municipality to potentially ruinous liability. Otherwise, petitioners would have no financial stake in the litigation and could litigate to the very end, in good faith or otherwise, secure in the knowledge that any judgment against them would be paid by the Village. Petitioners essentially read Public Officers Law § 18 to require them to cooperate in the defense of the action, but not in its

settlement. They seek to dictate unilaterally, without any accountability to the taxpayers, how the Village manages public funds and litigation risk. This cannot be, and is not, the law.

Petitioners' second argument is that the Village did not act diligently to bring about their cooperation. An insurer may not simply disclaim coverage for lack of cooperation after its insured refuses a settlement offer, but instead must attempt to persuade the insured that settlement is the best course of action (*see New York City Hous. Auth. v Housing Auth. Risk Retention Group, Inc.*, 203 F3d 145, 151-152 [2d Cir 2000]).

Here, when petitioners' counsel expressed reservations about the settlement offer, the Village's counsel responded to each of the concerns and explained why the nondisparagement clause was proper. In so doing, the Village acted diligently in seeking to bring about petitioners' cooperation.

Petitioners' third argument, that their attitude was not one of willful and avowed obstruction, is equally unavailing. The lower courts' findings to this effect with regard to petitioners' unreasonable rejection of the settlement offer have support in the record.

Finally, we address petitioners' contention that the Board violated the Open Meetings Law. The Open Meetings Law prohibits public bodies from conducting business in executive session outside the view of the public (Public Officers Law § 103). An exception exists for "discussions regarding proposed, pending or current litigation" (Public Officers Law § 105 [1] [d]).

Petitioners argue that the Board violated the Open Meetings Law when it decided in executive session to withdraw petitioners' defense and indemnification because the decision did not regard pending or current litigation to which the Village was a party.

Even if the Board misunderstood "pending or current litigation" (an issue we do not decide), the lower courts did not abuse their discretion in finding that any violations were unintentional and did not warrant invalidation of the Board's decision (*see Matter of Addesso v Sharpe*, 44 NY2d 925, 926-927 [1978] [holding sanction inappropriate where body held executive session in good faith]; *Matter of Roberts v Town Bd. of Carmel*, 207 AD2d 404, 405-406 [2d Dept 1994] [holding sanction not warranted for negligent failure to comply with Public Officers Law § 105]).

Accordingly, the order of the Appellate Division should be affirmed, with costs.

PIGOTT, J. (dissenting). The majority in this case makes two points: (1) that a municipality may withdraw a defense and indemnification of current and former municipal officials for failure to accept a reasonable settlement offer; and (2) that the First Amendment to the United States Constitution does not warrant a different result. While I have no quarrel with either proposition in the appropriate case, this is not such a case and I therefore dissent.

The Incorporated Village of Freeport hired the law firm of Wilson, Elser, Moskowitz, Edelman & Dicker, LLP (Wilson, Elser) to represent it and its elected and appointed officials in two lawsuits (the underlying actions) brought in July 2008. Plaintiff Water Works Realty Corp. and its principal alleged that while they had made a "business decision" not to pay Water Works' real property taxes, the Village defendants colluded in every fashion possible to deprive plaintiffs of their property through a conspiracy surrounding a tax sale of the Water Works property. The litigation appeared to proceed apace, having initially been brought in state court but removed, on stipulation, to the United States District Court for the Eastern District of New York.

In March 2009, village elections brought a new mayor and two new village trustees. Three of the original board members left office while two, Jorge Martinez[1] and William H. White, remained, along with the Village Treasurer, Vilma Lancaster. In July 2009, the new village majority, perceiving a conflict of interest between the "old board" and the new majority, hired separate counsel, Warren and Warren, LLP, to represent the Village going forward. Thereafter, the new majority's attorney negotiated with attorneys for the plaintiffs in the underlying actions and ultimately agreed to a settlement of $3.5 million to be paid by the Village.[2]

The "stipulation of settlement" appears to have been executed in November 2009 by plaintiffs in the underlying actions, the Village by its new mayor, Andrew Hardwick, and counsel for both the plaintiffs and Warren and Warren, the attorneys hired by the "new Village."

---

1. The underlying actions were discontinued against Martinez.

2. The majority assumes that the settlement was "reasonable"; however, I find no record support for this claim, as the parties had not engaged in pretrial discovery prior to the settlement.

The rub came, and thus this lawsuit, when someone (it is not entirely clear who) sought not a stipulation of settlement—that had already been agreed to in November 2009 and approved by the board by a vote of 3-0 (with Trustees Martinez and White abstaining)—but, rather, a stipulation of discontinuance that was addressed to the defendants represented by Wilson, Elser. The Village was not noted in this stipulation, apparently because the Village, through its new mayor, had executed the previous stipulation of *settlement*. The stipulation of discontinuance (which is typically signed by the attorneys, not the litigants), sent to the plaintiffs by Village counsel, stated, in addition to the usual boilerplate, as follows:

> "Each undersigned Defendant specifically represents and warrants that he/she has read the Village Stipulation [of settlement] and this Stipulation carefully and; that he/she has fully discussed it with his/her attorneys and that he/she has signed this Stipulation voluntarily and of his/her own free will; and he/she has no objections to the Village Stipulation nor this Stipulation and agrees not to ever interfere, nor challenge or criticize the terms of either Stipulation in any manner."

Petitioners refused to sign this stipulation, but made it abundantly clear that they are willing to sign a stipulation of discontinuance absent this language.

The majority makes much of the fact that this stipulation of discontinuance requires no money to be paid by the petitioners and therefore, ipso facto, their refusal to sign the stipulation constitutes a failure to cooperate.

However, one has to ask why, if the plaintiffs in the underlying action are receiving no further funds from defendants, who have not even asked them to sign the stipulation of *settlement*, one would need anything more than a stipulation of discontinuance signed by their attorneys, as is the usual practice. Indeed, a simple motion before the trial court to dismiss the complaint based upon its settlement would suffice.

Obviously, it is important to someone that these litigants be silenced. Two of them, at the time of the settlement, were still on the Village Board. A third, the Village Treasurer, while not a voting member of the Board, remained in office at the time the settlement was reached. Our decision today means that these two elected officials and the Village Treasurer are prohibited

from speaking against a proposal that they have opposed and must, instead, effectively commit perjury by stating that they have "no objections to the Village Stipulation" even though the public record shows otherwise. The better question here is why a village and its new board would insist on this promise of silence. A settlement of this size should invite vigorous debate, not suppress it.

Judges GRAFFEO, READ, SMITH, RIVERA and ABDUS-SALAAM concur with Chief Judge LIPPMAN; Judge PIGOTT dissents in an opinion.

Order affirmed, with costs.