Denson v Donald J. Trump for President, Inc. (2020 NY Slip Op 00923)





Denson v Donald J. Trump for President, Inc.


2020 NY Slip Op 00923


Decided on February 6, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 6, 2020

Gische, J.P., Webber, Kern, Moulton, JJ.


101616/17 10334A 10334

[*1] Jessica Denson, Plaintiff-Appellant,
v Donald J. Trump For President, Inc., Defendant-Respondent.


The Law Office of Maury B. Josephson, P.C., Uniondale (Maury B. Josephson of counsel), for appellant.
LaRocca Hornik Rosen & Greenberg, LLP, New York (Patrick McPartland of counsel), for respondent.



Judgment, Supreme Court, New York County (Arlene Bluth, J.), entered July 22, 2019, in defendant's favor, unanimously reversed, on the law, the judgment and the arbitration awards upon which they were entered vacated, without costs. Appeal from order, same court and Justice, entered on or about March 14, 2019, which denied plaintiff's motion to vacate the arbitration awards, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
The gravamen of this appeal is whether arbitration awards, predicated on claimed violations of a non-disclosure, non-disparagement agreement, should be vacated. For the reasons that follow, the awards should be vacated because they were partly made in violation of public policy, and otherwise in excess of the arbitrator's authority, as limited by defendant's demand for arbitration. The parties' various disputes have endured a circuitous route through state court, federal court and an arbitrator.
Plaintiff is the former Director of Hispanic Engagement for defendant, the company that ran Donald J. Trump's 2016 presidential campaign. She contends that during her term of employment, she was subject to a hostile work environment and experienced sex discrimination, and that after she complained, high ranking persons in the campaign retaliated against her. In November 2017, plaintiff filed this action in Supreme Court asserting violations of the New York City Human Rights Law against the campaign, including sexual discrimination, a hostile work environment, and retaliation. She also asserted claims of defamation, defamation per se, and intentional and negligent infliction of emotional distress, all arising from the events occurring during her term of employment.
As a condition of her initial engagement by defendant, plaintiff was required to sign a non-competition, non-disclosure, non-disparagement agreement (NDA). This dispute only concerns that part of the NDA addressing non-disclosure and non-disparagement. The NDA contains broad prohibitions against plaintiff disclosing, disseminating, or publishing any confidential information detrimental to Candidate Donald J. Trump, or any "Trump Person," broadly defined in the NDA to include various Trump family members and Trump entities (collectively Trump or defendant). The NDA also prohibited plaintiff from demeaning or disparaging Trump publicly. These particular provisions have no temporal duration, no geographic restriction, and apply to all manner of expression in all and any contexts. Confidential information is expressly defined and includes, in its most general application, all information "that Mr. Trump insists remain private or confidential. . . ." There is no definition of disparagement or demeaning conduct in the NDA.
With respect to the resolution of disputes, the NDA provides in relevant part, that any dispute arising under or relating to the NDA, at the sole discretion of each covered Trump person [*2]or entity, may be submitted to binding arbitration in the State of New York, pursuant to the rules for commercial arbitrations of the American Association for Arbitration. Pursuant to the terms of the NDA, plaintiff expressly agreed that she would not contest such submission. Notably, the discretion to seek arbitration of issues arising out of the NDA is unilateral in Trump's favor and plaintiff has no right to seek arbitration. The NDA does not restrict plaintiff from asserting her rights in a court proceeding, but if that dispute arises out of the NDA, and Trump demands arbitration, then plaintiff has no right to challenge the procedure. The NDA also provides that any arbitration award shall include costs and legal fees to the prevailing party.
In December 2017, following the filing of this action, defendant filed a demand to arbitrate with the AAA providing the following description of its dispute with plaintiff:
"Respondent [Denson] breached confidentiality and non-disparagement obligations contained in a written agreement she executed during her employment with claimant Donald J. Trump for President, Inc. She breached her obligations by publishing certain confidential information and disparaging statements in connection with a lawsuit she filed against claimant in New York Supreme Court. Claimant is seeking compensatory damages, punitive damages, and all legal fees and costs incurred."
No later or amended demand was ever filed. Consequently, this December 2017 Demand to Arbitrate provides the guidepost for the issues that were before the arbitrator when he made his awards.
In March 2018, defendant filed a motion in this action to compel arbitration. Supreme Court (Judge Bluth) denied the motion in a prior order dated August 9, 2018. The court decided that although the arbitration clause applied to "any dispute arising under this agreement," it did not apply to "any" dispute between the parties or to any employment related dispute. The court also observed that although the NDA regulated plaintiff's behavior in prohibiting certain acts by her, it did not obligate plaintiff to arbitrate any claim she might have against defendant. The court concluded that the claims made in this state action arise out of the terms of plaintiff's employment and are not covered by the NDA.
While the motion to compel was sub judice, on March 26, 2018, plaintiff commenced a second action against defendant in Federal District Court. She sought a declaration that the NDA was void and unenforceable as against public policy (Denson v Donald J. Trump for President, Inc., US Dist Ct., SD NY, 18 Civ 2690, Furman J., 2018). In response, defendant brought another motion to compel arbitration. By order dated August 30, 2018, Judge Jesse Furman granted defendant's motion, determining that the parties had agreed to proceed with binding arbitration and it was up to the arbitrator to rule on whether the arbitration agreement was valid. Judge Furman, referring to Judge Bluth's August 9, 2018 order, distinguished the two lawsuits, describing the federal action as a direct challenge to the NDA, whereas the state action pertained to plaintiff's affirmative human rights law violations claims, arising out of her employment relationship and they were not otherwise covered by the NDA (id. at *2).
Upon prevailing on its motion to compel arbitration in the federal action, defendant proceeded with the arbitration process. Plaintiff, though aware of the arbitration proceeding, chose not to fully participate in it. She did, however, send a letter to the arbitrator that raised two critical points. She argued that per Judge Bluth's August 9, 2018 order, the claims she made in this human rights action were not part of the arbitration and that she was not time barred and was appealing the federal court's finding that the validity of the NDA as a whole should be decided at arbitration.
The arbitrator issued a partial award dated October 19, 2018 and then a final award on December 11, 2018 (collectively the arbitration award). Based upon plaintiff's letter and Judge Furman's order, the arbitrator concluded that the issue of the validity of the NDA was before him. He decided that the NDA, as a whole, was neither void nor unenforceable.
The arbitrator went on to generally find that plaintiff breached the NDA by "disclosing, disseminating, and publishing confidential matter in the Federal Action, and by making [*3]disparaging comments about [c]laimant and the [a]greement on the Internet on her GoFundMe page and on her Twitter account." There were no detailed or further findings of fact. A monetary award was made against plaintiff consisting of $24,808.20 attorneys' fees in the federal action, and a supplemental award was made for $4,291.85 attorneys' fees in the federal action, plus $20,407.59 in attorneys' fees incurred in the arbitration. Notably, notwithstanding defendant's continuing claim (even before this court) that the mere filing of this State Human Rights Law action was itself a violation of the NDA, the arbitrator denied that aspect of defendant's relief as requested in its Demand to Arbitrate, based upon Judge Bluth's August 9, 2018 order.
Following the award, plaintiff brought a motion in this action to vacate the award.[FN1],[FN2] By judgment entered July 22, 2019, Judge Bluth denied the motion. This appeal ensued.
Plaintiff seeks reversal of Supreme Court's denial of the request to vacate the arbitration award. She advances wide ranging arguments that the award violates strong public policy and that the arbitrator otherwise exceeded his authority, as limited by the Demand to Arbitrate.
CPLR7511(b) sets forth the statutory grounds for vacating an arbitration award. Where, as here, the movant was served with a notice of intention to arbitrate, the court may vacate the award if the rights of the movant were prejudiced by: (1) corruption, fraud or misconduct in procuring the award; (2) partiality of the arbitrator; (3) the arbitrator exceeding or imperfectly executing his/her power or (4) the arbitrator failing to follow the procedure of CPLR article 75 (CPLR 7511[b][1]). With respect to whether an arbitrator exceeded or imperfectly executed his/her power, an award will not be overturned unless the award violates a strong public policy, is totally irrational or exceeds a specifically enumerated limitation on the arbitrator's power (Matter of Silverman [Benmore Coats], 61 NY2d 299 [1984]; Matter of Kowalski [New York State Dept. of Correctional Services], 16 NY3d 85, 90 [2010], Frankel v Sardis, 76 AD3d 136, 139 [1st Dept. 2016].
In general, the grounds for vacating an arbitration award are narrowly construed (Frankel, 76 AD3d at 139-140). Moreover, an arbitration award must be upheld, even where the arbitrator makes errors of law and/or fact (Wein & Malkin LLP v Helmsley-Spear, Inc., 6 NY3d 471, 479-480 [2006], citing Matter of Sprinzen [Nomberg], 46 NY2d 623, 629 [1979]). It is not for the court to assume the role of overseer of the arbitration; nor may it mold an award to its sense of justice (Wein & Malkin, 6 NY3d at 480).
An arbitration award violates strong public policy "only where [the] court can conclude, without engaging in any extended fact finding or legal analysis, that a law prohibits the particular matters to be decided by arbitration, or where the award itself violates a well defined constitutional, statutory or common law of this state" (Matter of Reddy v Schaffer, 123 AD3d 935, 937 [2d Dept 2014]). An award will be found violative on public policy grounds only where such policy prohibits, in the absolute sense, particular matters being decided or certain relief being granted by the arbitrator (Sprinzen, 46 NY2d at 631). Vacatur on public policy grounds is exercised sparingly (Matter of Niers-Folks Inc. [Drake], 75 AD2d 787 [1st Dept 1980]). This is to preserve the parties' choice of a nonjudicial forum to the greatest extent [*4]possible (Sprinzen 46 NY2d at 630).
Nonetheless, some examples where the courts have held that public policy renders a particular issue nonarbitrable prove instructive in determining this issue (Sprinzen, 46 NY2d at 630; Associated Teachers of Huntington v Board of Education Union Free School Dist. No.3, Town of Huntington, 33 NY2d 229, 235-236 [1973]). They include: punitive damages (Garrity v Lyle Stuart, Inc., 40 NY2d 354 [1976]; violation of the State anti-trust laws (Matter of Aimee Wholesale Corp. [Tomar Prods.], 21 NY2d 621, 625-626 [1968]); liquidation of insolvent insurance companies (Matter of Knickerbocker Agency [Holz], 4 NY2d 245, 254 [1958]); usury (Durst v Abash, 22 AD2d 39 [1st Dept 1964], affd 17 NY2d 445 [1965]); where an award prevents an employer from fulfilling its legal obligation to protect against workplace sexual harassment (Matter of Wertheim & Co. v Halpert, 48 NY2d 681 [1979]; Matter of New York City Tr. Auth. v Phillips, 162 AD3d 93 [1st Dept 2018], lv dismissed 31 NY3d 1139 [2018]); where an award of child support violates the Child Support Standards Act (Hirsch v Hirsch, 4 AD3d 451 [2d Dept 2004]); and where an award violates the State's public policy of providing the public with high quality, efficient and effective hospital services (Matter of State Univ. of N.Y. v Young, 170 AD2d 510 [2d Dept 1991], lv denied 78 NY2d 908 [1991], cert denied 506 US 1035 [1992]). Recently, the legislature enacted laws prohibiting mandatory arbitration of sexual harassment claims, and more broadly, all discrimination claims (CPLR 7515).
Exceeding expressly enumerated limits on an arbitrator's authority is a separate basis to invalidate an award as an excess of authority. Enumerated limits of an arbitrator's authority may be found in the arbitration clause of an agreement, in a statute, or in a notice or demand for arbitration (Silverman, 61 NY2d at 307 [arbitration clause of contract]; Matter of MKC Dev. Corp. v Weiss, 203 AD2d 573, 574 [2d Dept 1994] [statutory, i.e., CPLR 7513]; Matter of Denihan, 97 AD2d 69, 73 [1st Dept 1983], appeal dismissed 61 NY2d 905 [1984] [arbitrators purported to resolve an issue that had not been submitted to them]). It is well established that an arbitrator's authority extends only to those issues that are actually presented by the parties (Matter of Joan Hansen & Co. Inc. v Everlast World's Boxing Headquarters Corp., 13 NY3d 168 [2009]). Even where a claim is otherwise arbitrable, the scope of the arbitration is still limited to the specific issues presented and may not extend to those that are materially different or legally distinct (Joan Hansen, 13 NY3d at 173-174). Simply stated, an arbitrator exceeds his or her authority by reaching issues not raised by the parties (Matter of Banegas v GEICO Ins. Co., 167 AD3d 873, 875 [2d Dept 2018]; Matter of Slocum v Madariaga, 123 AD3d 1046, 1047 [2d Dept 2014]). CPLR 7511(c)(2) provides that the remedy for an award issued in excess of the arbitrator's authority is modification of the award, if it can be modified without affecting the merits of decision on the issues submitted. If modification is not possible, then vacatur of the entire award is required (see e.g. Slocum, 123 AD3d at 1047).
A public policy argument may be raised for the first time on a motion to vacate, and should be considered by the court (Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Bd. of Educ. of City School Dist. of City of N.Y., 1 NY3d 72, 79 [2003] [internal citations omitted]; see also Matter of Gansburg v Blachman, 111 AD3d 935-936 [2d Dept 2013]). A claim that the arbitrator has decided issues that were not otherwise submitted can, for obvious reasons, only be raised once the award is made (see Matter of Brijmohan v State Farm Ins. Co., 92 NY2d 821, 822-823 [1998]). Consequently, even though plaintiff did not fully participate in the arbitration proceedings and failed to assert certain arguments the she now raises, this does not mean the award should automatically be confirmed.
Plaintiff contends that the NDA is so broad and over-inclusive, prohibiting virtually any negative statement about the campaign and Trump Person, that it is void or should be invalidated as against public policy. There is no legal basis for the court to conclude that non-disparagement agreements per se violate public policy. Quite the contrary, the courts routinely resolve the merits of conflicting claims pertaining to non-disparagement agreements and the scope of their coverage, without relying on public policy grounds (see e.g. Davis v Nyack Hosp., 130 AD3d 455 [1st Dept 2015], BDCM Fund Advisser, L.L.C. v Zenni, 103 AD3d 475 [1st Dept 2013]; Smolev v Carole Hochman Design Group, Inc., 79 AD3d 540 [1st Dept 2010]). Nor is there any legal basis to find that issues regarding NDAs and their permissible scope cannot be decided by [*5]an arbitrator. The inclusion of a non-disparagement provision in the NDA, which when executed, was an agreement between private parties, does not impermissibly intrude on plaintiff's rights of free expression (see Matter of Lancaster v Inc. Vil. of Freeport, 22 NY3d 30, 37 [2013]; see also Forty-Seventh-Fifth Co. v Nektalov, 225 AD2d 343 [1st Dept 1996]). Here, non-disparagement and keeping certain matters confidential during the term of plaintiff's service and thereafter were specific conditions of plaintiff's engagement with the campaign. To the extent that the plaintiff makes legal arguments concerning the scope of the NDA, any error by the arbitrator is, at most, a mistake of law that cannot serve as a predicate basis for vacating these awards (Sprinzen, 46 NY2d at 629; Merrill Lynch, Pierce, Fenner & Smith, v Benjamin, 1 AD3d 39, 44 [1st Dept 2003] [internal citation omitted]).
Although plaintiff also contends that the NDA was "weaponized" by defendant to suppress and defeat her human rights violation claims, this state action is going forward, in accordance with the Supreme Court, federal court and arbitration orders. Plaintiff's public policy argument is really that the arbitration action was initiated by defendant as a litigation tactic. However, examining defendant's motives in demanding arbitration would require the court's engagement in an extended factual analysis. Such inquiry is contrary to established law that a strong public policy justifying the vacatur of an arbitration award must be apparent from the face of the award, without extended factual inquiry (Matter of New York City Tr. Auth. v Transport Workers Union of Am. Local 100, AFL-CIO, 99 NY2d 1, 7 [2002]; see Lancaster v Incorp. Vil. of Freeport, 22 NY3d 30, 37 [2013]).[FN3]
The arbitrator did not exceed his enumerated authority by reaching the gateway issue of the validity of the NDA. The parties agreed that the rules of the AAA would apply, which provide that questions concerning the scope and validity of the NDA, including issues of arbitrability, would be decided by the arbitrator (Flintlock Constr. Servs., L.L.C. v Weiss, 122 AD3d 51, 54 [1st Dept 2014] [internal citations omitted], appeal dismissed 24 NY3d 1209 [2015]). Morever, implicit in the Demand to Arbitrate is defendant's claim that the underlying NDA containing the arbitration provision is valid and enforceable. Plaintiff's only articulated defense to arbitration, asserted both in the federal action and her letter to the arbitrator, was that the NDA was void and unenforceable. Thus, the issue of the validity of the NDA was properly before the arbitrator. The arbitrator's decision on the validity of the NDA did not run afoul of the rule that a party cannot be forced to arbitrate a dispute it did not agree to submit to arbitration (see Howsam v Dean Witter Reynolds, Inc., 537 US 79, 83 [2002]; Matter of Steyn v CRTV, L.L.C., 175 AD3d 1, 10-11 [1st Dept 2019]).
Plaintiff's other arguments pertain to the award itself as being in violation of public policy or made in excess of authority. The award can be broken down into two parts. The first part is an award for the disclosure of confidences in filing the federal action, in which plaintiff attacks the validity of the NDA. The arbitrator stated that plaintiff breached the NDA "by making disparaging statements about [defendant in the Federal action]. . . ." We find that this portion of the award violates public policy.
There is a deep-rooted, long-standing public policy in favor of a person's right to make statements during the course of court proceedings without penalty (Rosenberg v MetLife, Inc., 8 NY3d 359, 365 [2007], quoting Toker v Pollak, 44 NY2d 211, 218 [1978]). "[S]tatements uttered in the course of a judicial . . . proceeding are absolutely privileged" (Herzfeld & Stern v Beck, 175 AD2d 689, 691 [1st Dept 1991] [internal citations omitted], lv dismissed 79 NY2d 914 [1992], lv dismissed 82 NY2d 789 [1993], lv dismissed 89 NY2d [1997]). This is true so long as the statements are material and pertinent to the issues involved and "regardless of the motive with which they are made" (Herzfeld, 175 AD2d at 691). This legal principle is also found in cases where a party claims it was defamed in court or court documents. Disparagement, although [*6]not exactly the same as defamation, is analogous because both torts concern communications of a negative and unflattering nature (see Ruder & Finn Inc. v Seaboard Sur. Co., 52 NY2d 663, 670 [1981] ["defamation and disparagement in the commercial context are allied in that the gravamen of both are falsehoods published to third parties"]). In defamation actions, "[p]ublic policy mandates that certain communications, although defamatory, cannot serve as the basis for the imposition of liability" (Rosenberg v MetLife, Inc., 8 NY3d 359, 365 [2007], quoting Toker v Pollak, 44 NY2d at 218). To hold otherwise would impede justice by "hamper[ing] the search for truth and prevent [the] making [of] inquiries with that freedom and boldness which the welfare of society requires" (Front, Inc. v Khalil, 24 NY3d 713, 718 [2015]).
Plaintiff's negative statements about defendant, for which the arbitrator made an award, were made in the context of the federal action in which she sought a declaration that the NDA was unenforceable (Rosenberg v MetLife, Inc., 8 NY3d at 365-366). By concluding that the allegations in the federal action are tantamount to disclosure of confidential information violative of the NDA, the arbitrator improperly punished plaintiff for availing herself of a judicial forum. Defendant is hard-pressed to explain how plaintiff could have pursued her rights without setting forth necessary factual statements for the federal court to consider.
The remainder of the award was based upon certain Twitter "Tweets" and statements on a GoFundMe page. The nature of the Demand to Arbitrate, however, was limited to statements made "in connection" with this state action. Moreover, the Demand to Arbitrate, dated December 20, 2017, could not have included after-occurring events. The arbitration award does not identify these offending Tweets or posts and we do not know when they were posted. Nor does the award correlate the posts to this state action. While the arbitrator was not required to make specific findings of fact, the award on its face does not allow for a conclusion that the offending conduct was made within the scope of the Demand to Arbitrate. The record made by defendant before Supreme Court only highlights this defect. Defendant relies on plaintiff's actions subsequent to the date of its Demand to Arbitrate in an effort to have the arbitration award confirmed. Since the award takes into account events occurring after the demand, which could not have been legitimately considered at arbitration, the award was made in excess of the arbitrator's enumerated authority. Furthermore, given the nature of the award, there is no way to modify it and it must be vacated in its entirety (CPLR 7511[c][2]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: FEBRUARY 6, 2020
CLERK



Footnotes

Footnote 1:It is unclear why this motion was not brought as a completely separate proceeding, under a new index number, given that Supreme Court, the federal court and the arbitrator each treated this action as separate from the arbitration proceeding.

Footnote 2:The parties also brought a motion and cross motion to affirm (defendant), and to vacate (plaintiff), in the Federal action. The motions were eventually denied by Judge Furman on the basis of res judicata (or claim preclusion), after Judge Bluth denied plaintiff's motion and entered judgment (Denson v Donald J. Trump for President, Inc., US Dist Ct, SD NY, 18 Civ 2690, Furman J., 2019).

Footnote 3:Plaintiff's claims concerning defendant's motivation might have been considered in the arbitration, had she participated in that proceeding and fully developed the record (see Matter of Kowalski, 16 NY3d 85, 90).